OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Janet C. Spigos, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying appellant's petition for a civil protection order.
 {¶ 2} Appellant and defendant-appellee, Dimitrios G. Spigos, were married on December 17, 1983, and four children were born as issue of the marriage. On May 27, 2003, appellant filed a petition for a domestic violence protection order against appellee pursuant to R.C. 3113.31. On the same date, the trial court issued a temporary ex parte protection order, to be effective until June 5, 2003, at which time a full hearing was scheduled.
 {¶ 3} The matter came for hearing before the trial court on June 5, 2003. At the beginning of the hearing, counsel for appellant indicated that appellant had "two witnesses, professional witnesses on call," and that counsel had contacted those witnesses and they were "in transit to court." (Tr. 4.)
 {¶ 4} Appellant testified on her own behalf. According to appellant, on April 12, 2003, she and her husband were driving to their son John's baseball game when appellee mentioned that John was embarrassed by the way appellant dressed. As the discussion ensued, appellee became agitated, and before they arrived at the baseball field, appellee decided that appellant was not going to be permitted to attend the game.
 {¶ 5} Appellee told appellant he was driving her home, and warned her: "Don't follow back to the baseball game in your own car. If you do I'll start my plan to expose you." (Tr. 10.) According to appellant, appellee then "put his fist at my face and said I'm going to kill you, or I could kill you, I don't remember the exact words." (Tr. 10.) Appellee accelerated the car, and appellant was concerned they might have an accident. Appellant asked appellee to pull the car over and let her out. Appellee slowed down, returned to a normal speed, and drove appellant to their home.
 {¶ 6} Appellee had made recurring threats to appellant "to expose the fact that I was having an affair," after an individual had phoned appellee and told him that appellant was acting inappropriately at the school where their daughter attended. (Tr. 12.) When initially confronted by appellee, appellant denied that anything inappropriate had occurred. Appellant related one incident in which appellee "was angry and I remember at one time him pushing me, because I was trying to hold him and hug him. And I remember him pushing me off, not violently, just you know like brushing me off of him." (Tr. 13-14.)
 {¶ 7} Appellee later received another phone call regarding appellant, in which the caller related that appellant was having an affair with the administrator of their daughter's school. Appellant told the school administrator that someone was telling lies about a relationship between them. During direct examination, in response to an inquiry by the trial court, appellant acknowledged that she had "one encounter of sexual relations" with the individual at the school. (Tr. 28.)
 {¶ 8} Appellant testified that appellee's behavior changed after the allegations. On one occasion, appellee was distraught and told appellant "he was going to leave and disappear, that I would not ever see him again." (Tr. 17.) According to appellant, appellee began placing restrictions on her. On two occasions, he did not let appellant go to school functions, and he did not want her to be at school without his permission or unless he was accompanying her. Appellee also threatened to tell appellant's mother and other friends about the affair, and to confront the school administrator during school hours.
 {¶ 9} On April 30, 2003, appellee informed appellant that he was "going to tell the kids about what I had done and also expose me at school." (Tr. 36.) Later that night, appellant phoned the school administrator on her cell phone, and appellee overheard the conversation. Appellant put the phone in her pocket, and appellee "pushed me on the bed and was struggling, digging in my pocket to get out the cell phone." Appellant pulled the phone out of her pocket, handed it to her husband and said, "[y]es, I was talking to Dan." (Tr. 37.) Appellee was angry, and pushed appellant onto the floor and "put his foot over on top of my head to keep my head down on the floor. He didn't stomp on my head, he just kept pressure on me to keep my head on the floor." (Tr. 37-38.) Appellee later pinned appellant against the double doors of the bedroom and stated, "I'm going to kill you." (Tr. 38.) Appellant said, "get off of me, and I scratched his forearms." (Tr. 38.) Later, appellee "told me I also kicked [him] with my foot in the chest to push him off of me." (Tr. 38.)
 {¶ 10} While appellant was still being questioned on direct examination, the trial judge abruptly stated, "[a]ll right. I'm going to stop you right there. I would like to see counsel please." (Tr. 39.) Although not part of the transcript, appellant represents that the trial judge met with counsel and attempted to mediate a settlement, but that efforts to reach an agreement were unsuccessful.
 {¶ 11} By entry filed June 5, 2003, the trial court found that appellant had failed to prove, by a preponderance of the evidence, that appellee attempted to cause or caused bodily injury to a family or household member, or placed a family or household member by threat of force in fear of imminent physical harm. Thus, the trial court denied appellant's petition.
 {¶ 12} On appeal, appellant sets forth the following two assignments of error for review:
Assignment of Error One
The trial court erred when it terminated the trial and did not allow the Appellant to present the rest of her testimony, call other witnesses, or present arguments.
Assignment of Error Two
The trial court erred when it concluded that the Appellant had not established her claim by a preponderance of the evidence.
 {¶ 13} Under the first assignment of error, appellant contends that, in a civil domestic violence action, a trial court is required by statute to conduct a "full hearing" on a petitioner's claim. Appellant maintains that the right to a full hearing includes the opportunity to present evidence, both direct and rebuttal, as well as arguments. Appellant argues that, in the present case, the trial court only allowed her to call one witness (appellant herself), and the court did not allow appellant to finish her testimony, nor was she allowed to call any additional witnesses even though her counsel had informed the court that two professional witnesses were on their way to court. Appellant also argues that the trial court erred in failing to allow her the opportunity to present any arguments regarding the evidence presented.
 {¶ 14} The Ohio Supreme Court has noted that "[t]he General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case." Felton v. Felton (1997), 79 Ohio St.3d 34, 37. Thus, "R.C. 3113.31 authorizes a court in an ex parte hearing to issue a temporary protection order when the court finds there to be an `[i]mmediate and present danger of domestic violence to the family or household member.'" Id., quoting R.C. 3113.31(D). Following the issuance of a temporary order, "the court proceeds as in a normal civil action and grants a full hearing." Id. R.C.3113.31(E)(1) provides in part: "After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members."
 {¶ 15} It has been noted that R.C. 3113.31 does not define the term "full hearing." Deacon v. Landers (1990),68 Ohio App.3d 26, 29. One court has held that "the words `full hearing' as used in R.C. 3113.31 mean the same thing as the word `trial' as used in the Civil Rules." Stanton v. Guerrero (Aug. 31, 1994), Montgomery App. No. 14407. In Deacon, supra, at 29-30, the court construed the phrase "full hearing" as follows:
* * * [O]ther jurisdictions have determined that a "full hearing" embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of an opposing party and to meet them. Morgan v. United States (1937),304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129, 1132. See, also, Black's Law Dictionary (5 Ed.Rev. 1979) 605. A "full hearing" is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken. Akron, C. Y. Ry. Co. v. United States (1923),261 U.S. 184, 200, 43 S.Ct. 270, 277, 67 L.Ed. 605, 614; Boston MaineR.R. v. United States (D.Mass. 1962) 208 F. Supp. 661, 669;Consolidated Freightways v. United States (N.D.Wash. 1949),83 F. Supp. 811, 814; Application of Kauai (1978), 60 Haw. 166,182, 590 P.2d 524, 536.
Without attempting to set definitive guidelines for the manner in which to conduct a "full hearing" under R.C. 3113.31, we hold that where the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments. * * *
 {¶ 16} We find the Deacon court's interpretation of "full hearing" persuasive, and applying those general principles to the facts in the instant case, we conclude that appellant was not afforded a meaningful opportunity to be heard. The limited record indicates that, without warning, the trial court interrupted the testimony of appellant and requested to speak with counsel off the record. The court subsequently entered judgment against appellant on the basis that appellant had failed to prove, by a preponderance of the evidence, that appellee caused or attempted to cause bodily injury to a family member or placed a family member in fear of imminent physical harm by threat of force. Here, where the trial court rendered judgment before appellant had the opportunity to conclude her testimony, to offer other evidence on her behalf or to present arguments, we find that appellant was denied a full hearing on her motion for a protection order.
 {¶ 17} Appellee contends that the issues raised at the hearing have been rendered moot based upon orders entered by the court in the parties' divorce case rendered subsequent to the hearing at issue. Those orders, however, are not part of the record before this court on appeal.
 {¶ 18} Further, as noted by appellant, the Ohio Supreme Court has recognized that a civil protection order comes with "several features not available with a dissolution or divorce decree."Felton, supra, at 38. Specifically, the Felton court listed the following differences between a protection order and orders in a divorce or similar decree: (1) the results of violating a civil protection order under R.C. 3113.31 "are much more immediate and consequential than the results of violating a provision of a divorce or dissolution decree"; (2) the domestic violence statutes provide for the "preferred arrest of a violator of a protection order," whereas no such policy applies to violations of a court order or judgment entry; (3) the statutes mandate that a copy of the protection order be issued to all law enforcement agencies with jurisdiction to enforce the order, and that law enforcement agencies maintain an index of the civil protection order, thereby making enforcement of the protection order "much more apt to occur than a contempt order"; and (4) "a protection order is easier for a petitioner to enforce than a `no-harassment' provision in a dissolution or divorce decree." Id. at 38-39. In light of the above, we would agree with appellant's contention that the granting of a civil protection order offers a petitioner the potential for additional benefits not available under orders issued in the parties' divorce action (although the use of a protection order as a sword, rather than a shield, in an ongoing custody battle would not be one of the "additional benefits" intended by the legislature).
 {¶ 19} Based upon the foregoing, appellant's first assignment of error is sustained, and this matter is remanded to the trial court for further proceedings.
 {¶ 20} Under the second assignment of error, appellant argues that the trial court erred in failing to grant the petition for a civil protection order because, it is asserted, the manifest weight of the evidence presented at trial established, by a preponderance of the evidence, that appellee committed two acts of domestic violence against her. However, while we have concluded above that the trial court erred in failing to allow appellant the opportunity for a full hearing, the trial court's decision to interrupt the hearing not only affected the evidence appellant sought to introduce but, also, precluded appellee from presenting any evidence of his own; as such, because appellee did not offer any evidence, there was no evidence to weigh and no issues of credibility to determine. Further, while we remand this matter for a full hearing, we make no comment with respect to the strength or weakness of the evidence presented by appellant at the time the court terminated the proceedings. Accordingly, appellant's second assignment of error is overruled.
 {¶ 21} Based upon the foregoing, appellant's first assignment of error is sustained, appellant's second assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and McCormac, JJ., concur.