[Cite as *J.S. v. L.S.*, 2020-Ohio-1135.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [J.S.], | : | |
| Petitioner-Appellee, | : | No. 19AP-400 |
| | | (C.P.C. No. 19DV-806) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [L.S.], | : | |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on March 26, 2020

**On brief:** *Grossman Law Offices, John H. Cousins IV,* and *Nadia Khan-Ajam*, for appellee. **Argued:** *John H. Cousins IV.*

**On brief:** *Petroff Law Offices LLC,* and *Christopher L. Trolinger*, for appellant. **Argued:** *Christopher L. Trolinger.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Respondent-appellant, L.S., appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, issuing a civil protection order ("CPO") to petitioner-appellee, J.S. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} On May 1, 2019, J.S. filed a petition for a domestic violence CPO on behalf of herself and her two minor children against L.S., her former boyfriend. The addendum to the petition states that L.S. had been threatening J.S. over the phone and in text messages, telling her he would "burn" her and that she "won't be a pretty face much longer." (Addendum, attached to Petition for CPO.) The addendum further stated L.S. had given a

black eye to J.S.'s two-year-old son, appeared at her children's daycare without authorization on two occasions, and left items on her doorstep without her permission. J.S. further alleged that L.S. sent her a video of his attempted suicide. The trial court granted J.S. a temporary CPO that same day and set the matter for a hearing.

{¶ 3} At the June 3, 2019 hearing, the trial court heard testimony from both J.S. and L.S., who both appeared pro se. J.S. testified that she dated L.S. briefly in 2018 but the two would occasionally reunite over the past several months. J.S. said she ended the relationship when she learned that L.S. had given her son a black eye. Subsequently, J.S. said she received messages through a fictitious Facebook account that she attributed to L.S. calling her a "whore" and telling her she "was going to regret this." (Tr. at 4.)

{¶ 4} When J.S. learned she was pregnant in 2019, she contacted L.S. to inform him that he may be the father. J.S. testified that in April 2019, L.S. sent her text messages threatening to show up at her house and take her son's belongings. Subsequently, J.S. said L.S. pulled his car up to the front of her house "screaming and cussing" and calling her a "whore." (Tr. at 5.) L.S. then told her she "wasn't going to be a pretty face for much longer." (Tr. at 5.) Following that incident, J.S. said she called the police and filed a police report.

{¶ 5} Additionally, J.S. testified that L.S. sent her a video of himself attempting suicide by tying a rope around his neck and securing it to a banister then standing on the banister "rocking back and forth." (Tr. at 9.) J.S. said that in the video, when L.S.'s daughter appears, L.S. throws the rope to the ground and yells at his daughter. Pursuant to J.S.'s testimony, L.S. told her it was her fault that he wanted to kill himself. J.S. testified that she told L.S. he was "unstable," and he replied that "he would burn [her] and that [she] couldn't get out of this game." (Tr. at 5.) J.S. further testified that after the trial court issued the temporary CPO, L.S. called her and drove past her father's house. Additionally, J.S. testified that L.S. sent a total of 27 text messages with pictures of J.S. in a state of undress to J.S.'s friend.

{¶ 6} The trial court inquired about J.S.'s allegation that L.S. had physically abused her child, and J.S. described an incident in which L.S.'s daughters reported to her that L.S. had hit her son's head with the shopping cart because the child was "acting out." (Tr. at 8.)

{¶ 7} The trial court asked L.S. whether there were any criminal warrants for his arrest, and he declined knowledge of any such warrants. The trial court indicated it was

going to have the bailiff check as to whether there were any warrants issued for L.S.'s arrest. Further, the trial court asked L.S. whether he was sure he wanted to proceed without counsel, informing him that criminal charges could result from his testimony, and L.S. stated he wanted to proceed without counsel.

{¶ 8} When L.S. testified, he denied ever physically abusing J.S.'s son or threatening to burn J.S. L.S. admitted sending a video to J.S. in which it appeared he was attempting to hang himself, but he denied his daughter ever saw him standing on the bannister. L.S. testified he sent the video because his difficult relationship with J.S. was a "roller coaster ride," and he thought the video would "get her to stop." (Tr. at 18.) L.S. also denied sending text messages with pictures of J.S. after the trial court issued the temporary CPO. L.S. further admitted going to J.S.'s child's daycare without permission, but he claimed to be doing so in order to help pay for the cost of childcare. Also, L.S. admitted to having a prior domestic violence charge for his conduct with the mother of one of his daughters.

{¶ 9} L.S. additionally alleged that J.S. had a pattern of seeking CPOs against all of her partners and that, during these various court proceedings, different courts have questioned her truthfulness and her mental health. J.S. denied having ever sought a CPO against the fathers of her other children. L.S. then provided the trial court with documents he alleged to be from two of J.S.'s attempts to obtain CPOs against different men, one from Licking County and one from Guernsey County.

{¶ 10} L.S.'s girlfriend attended the hearing, and she also provided testimony. The girlfriend denied J.S.'s allegation that L.S. had stalked his new girlfriend. J.S. offered to provide text messages to the trial court in which the girlfriend alleged that L.S. had stalked her.

{¶ 11} After a recess, the trial court stated it had a staff attorney "do some research" related to L.S.'s claims of J.S.'s previous attempts to seek CPOs against other men. The following exchange then occurred:

> THE COURT: * * * [L.S.], I'm very disturbed at you that you tried to offer in to this Court as evidence documents that cannot be authenticated and they may actually be fraudulent and cut and paste; and everything that she produced, my attorney was

able to verify about all your assaults, your domestic violence and your intimidation of a witness.

So with that being said, you are on the cusp of criminal charges. Because everything you provided is cut and paste and cut to your benefit and pasted, and that would have been authenticated. Even the matter you were - - and I apologize. Everything that you said or had cut and paste from common pleas court regarding her mental health condition is not a part of the record. What my attorney was able to ascertain was there was a record of a divorce, but it does not coincide with what you provided me and - - today with the cut and paste, I don't know what you did; but she was not able to authenticate or corroborate anything that you had said or provided to this Court. And the fact that you were trying to pass court documents on to this Court is - - I don't know what to say.

[L.S]: Can I respond, Your Honor?

THE COURT: Nope. Nope. No, no, no.

So at this point in time, after reviewing the evidence and having my attorney go through her research and find out that none of the evidence that the Respondent provided can be corroborated, authenticated, or even proven that it's not been cut and paste and crafted together, I do find that at this hearing the Petitioner provided the Court with enough credible testimony and/or evidence we should not significantly deviate from her original petition reviewed and approved by this Court. And I do believe she substantiated a reasonable fear and justify award of a civil protection order.

(Tr. at 49-51.) The trial court then specifically found that J.S. proved by a preponderance of the evidence that she was placed in fear of imminent risk and serious harm that is objectively reasonable, and that J.S. and her family were in danger of or had been a victim of domestic violence or have been placed in the fear thereof. Thus, the trial court stated it would grant J.S.'s petition for a CPO against L.S. for five years.

{¶ 12} Following the hearing, the trial court journalized its decision in a June 3, 2019 CPO granted for the protection of J.S. and her three minor children, including the child born in between the granting of the temporary CPO and the full hearing on the CPO. L.S. timely appeals.

## II. Assignments of Error

{¶ 13} L.S. assigns the following errors for our review:

[1.] The trial court erred in granting appellee's petition for a civil protection order without conducting a "full hearing" as required by R.C. § 3113.31.

[2.] The trial court's conducting of the civil protection hearing violated appellant's due process rights under the United States Constitution and the Ohio Constitution.

[3.] The trial court erred in failing to allow appellant the opportunity to question the witness or cross-examine the appellee contrary to Evid. R. 611.

[4.] The trial court erred in admitting evidence that was not properly presented or disclosed to the appellant during the hearing nor was appellant given the opportunity to question the appellee on the secret evidence.

[5.] The trial court committed plain error in conducting independent fact finding to find information and evidence not in the record and relied upon such in making its determination.

[6.] The trial court erred and failed to make sufficient factual findings to justify the granting of the petition for a civil protection order under R.C. § 3113.31.

[7.] The trial court erred as the granting of a civil protection order was not supported by the manifest weight of the evidence.

## III. First, Second, Third, Fourth, and Fifth Assignments of Error – Adequacy of the Hearing

{¶ 14} L.S.'s first, second, third, fourth, and fifth assignments of error are interrelated, and we address them jointly. Taken together, these five assignments of error stand for the proposition that the trial court erred in not affording L.S. a "full hearing" within the meaning of R.C. 3113.31. Within this broader argument, L.S. asserts his hearing was insufficient because the trial court interrupted him frequently, did not allow him to cross-examine J.S., considered evidence that J.S. submitted without disclosing the evidence to L.S., and relied on evidence not in the record to make a credibility

determination regarding L.S.'s proffered evidence without affording L.S. a chance to respond to the court's allegations.

{¶ 15} Generally, the decision of whether or not to grant a CPO lies within the sound discretion of the trial court. *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6, citing *Daughtry v. Daughtry*, 10th Dist. No. 11AP-59, 2011-Ohio-4210, ¶ 5, citing *Parrish v. Parrish*, 95 Ohio St.3d 1201 (2002). Here, however, L.S. alleges the trial court did not grant him a "full hearing" within the meaning of R.C. 3113.31. Where an appeal requires an analysis of R.C. 3113.31, the civil domestic violence statute, we apply a de novo standard of review. *Martin* at ¶ 6, citing *Hope Academy Broadway Campus v. Ohio Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 13.

{¶ 16} If a petitioner files a petition under R.C. 3113.31 and requests an ex parte order, the trial court is to hold a hearing the same day and, for good cause shown, may enter an ex parte temporary order. R.C. 3113.31(D)(1). When the court issues an ex parte order, "the court shall schedule a full hearing for a date that is within seven court days after the ex parte hearing." R.C. 3113.31(D)(2)(a).

{¶ 17} Though R.C. 3113.31 requires a "full hearing," the statute does not define the term "full hearing." This court has previously considered the meaning of "full hearing" as used in R.C. 3113.31. In *Tarini v. Tarini*, 10th Dist. No. 12AP-336, 2012-Ohio-6165, we noted that although R.C. 3113.31 does not define the term "full hearing," in general a full hearing " 'is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.' " *Tarini* at ¶ 14, quoting *Deacon v. Landers*, 68 Ohio App.3d 26, 30 (4th Dist.1990). " '[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments.' " *Id.*, quoting *Deacon* at 30.

### A. Informal Nature of the Hearing

{¶ 18} L.S.'s arguments related to the trial court's alleged interruptions of his testimony and the trial court's alleged failure to allow him to cross-examine J.S. are without merit. Both parties were pro se at the trial court, and the trial court permitted both parties to testify at length regarding their respective positions. What L.S. refers to as the trial court's interruptions more accurately reflect the trial court redirecting and refocusing the

parties' testimony to the relevant issues. Moreover, though L.S. complains he was not afforded an opportunity to cross-examine J.S., there is no indication in the record he ever asked to specifically cross-examine her. The hearing was somewhat freeform, perhaps deliberately so, in order to allow two pro se parties the opportunities to be fully heard. A pro se hearing on a CPO can still be a full hearing within the meaning of R.C. 3113.31 even where the hearing lacks "formality and structure." *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 34 (noting that a hearing "while lacking some formality and structure, did allow appellant the opportunity to present evidence and make her argument against the CPO" in accordance with R.C. 3113.31 and relevant case law). Thus, we overrule L.S.'s third assignment of error, and we overrule the portions of L.S.'s first and second assignments of error challenging the overall informality and adequacy of the hearing.

### B. Evidentiary Issues

{¶ 19} L.S. next argues the trial court erred by allowing J.S. to submit "secret evidence" to the trial court without providing the evidence to L.S. to review. The so-called "secret evidence" L.S. refers to is J.S.'s repeated references to a device allegedly containing text messages from L.S., screen shots of social media posts, and the video of his suicide attempt. Additionally, J.S. made references to prior criminal and legal proceedings involving L.S. While a review of the hearing transcript indicates J.S. refers several times to having these text messages and videos in her possession, possibly on a non-specified electronic device, it is unclear whether J.S. ever submitted this electronic device or any criminal or legal documents relating to L.S. to the trial court or that the trial court was able to review these items. However, the trial court did state that "everything J.S. produced, my attorney was able to verify," indicating the trial court accepted and reviewed some evidentiary material from J.S. even if the record is unclear as to exactly what that evidentiary material was. (Tr. 49.) Thus, to the extent the trial court reviewed evidence provided by J.S. without providing the evidence to L.S. and allowing him an opportunity to respond, the trial court erred and rendered his hearing something less than a full hearing as contemplated under R.C. 3113.31.

{¶ 20} L.S.'s final argument related to the adequacy of his hearing is that the trial court erred when it considered evidence outside the record in order to make a credibility determination of him and the evidence he submitted to the trial court. Specifically, L.S.

argues the trial court erred when it conducted an independent fact-finding mission during the hearing's recess and concluded, without affording him an opportunity to respond, that L.S. had submitted falsified court documents related to J.S.'s mental health.  J.S. responds that the trial court did not conduct independent factual research but instead was permissibly taking judicial notice of a public record.

{¶ 21} Pursuant to Evid.R. 201(B), a court can take judicial notice of a fact that is not subject to reasonable dispute that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  As a general matter, "a court may take judicial notice of public court records available on the internet."  *State v. Chairperson of the Ohio Adult Parole Auth.*, 10th Dist. No. 17AP-651, 2018-Ohio-1620, ¶ 23, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 8.

{¶ 22} Here, L.S. attempted to have admitted into evidence documents he claimed to be from prior court filings involving J.S. in other counties in Ohio.  L.S. asserted these documents would show both that J.S. had a history of seeking CPO's against former romantic partners and that other jurisdictions had documented J.S.'s mental health history.  When the trial court returned from recess, it stated it had conducted its own research and was unable to authenticate L.S.'s documents and accused him of fraudulently creating the document to represent a legal document that did not exist.

{¶ 23} After a careful reading of the hearing transcript, we do not agree with J.S.'s characterization of the trial court's conduct as permissibly taking judicial notice of a public record.  First, the trial court's professed "independent research" was more than taking judicial notice; it was an investigation into the veracity of a submitted document as opposed to a judicially noticed fact.  Secondly, and more importantly, the trial court's inability to verify the document during the recess led to the trial court's making serious accusations about L.S.'s potentially fraudulent conduct in a court proceeding.  This goes beyond taking judicial notice of a public record on the internet.  Further, the trial court refused to allow L.S. to respond to its allegation that L.S. had created a fictitious document and attempted to submit it to the court.  Under both the notion of a "full hearing" provided in R.C. 3113.31 and under the Rules of Evidence for taking judicial notice, the trial court owed L.S., at a minimum, the opportunity to respond to such a serious allegation.  *Tarini* at ¶ 14 (at a

minimum, a trial court conducting a CPO hearing must allow the presentation of evidence, both direct and rebuttal, and arguments); Evid.R. 201(E) ("[a] party is entitled upon timely request an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed"). *See also Tyler v. Tyler*, 2d Dist. No. 26875, 2016-Ohio-7419, ¶ 29 (a trial court errs in considering evidence outside the record during CPO proceedings; further, "[h]ad the trial court intended to take judicial notice of matters [in a prior legal proceeding], it should have given notice to the parties, and given the parties an opportunity to respond"); *State v. Bayliff*, 3d Dist. No. 2-10-08, 2010-Ohio-3944, ¶ 27 (noting "it was impermissible for the trial court to consider evidence outside the record and conduct its own investigation of the facts," and "[t]here is no authority for a trial court's independent investigation"). Thus, it was error for the trial court to independently attempt to verify the documents submitted to it without affording L.S. an opportunity to respond to the trial court's subsequent accusations of L.S. creating fictitious documents. *Tyler* at ¶ 29.

{¶ 24} Moreover, in reading the transcript of the hearing, the trial court's accusation of L.S.'s potentially fraudulent conduct is the first instance in which the trial court appears to make a credibility determination of the two parties, resulting in the trial court's granting of J.S.'s petition for the CPO. Because the outcome of the CPO hearing is so closely tied to the trial court's independent attempts to verify L.S.'s documents, we cannot say the trial court's conduct amounts to harmless error. *See Tyler* at ¶ 29 (where there is evidence in the record that both supports the trial court's decision and which the trial court could have relied upon in reaching a different conclusion, "we cannot conclude that the trial court's consideration of facts not in the record is harmless error"). Instead, we agree with L.S. that the trial court's conduct in refusing to allow him to respond to its independent factual research deprived L.S. of a "full hearing" within the meaning of R.C. 3113.31.

{¶ 25} Having concluded the trial court erred to the extent it considered evidence submitted by J.S. without allowing L.S. to review the evidence and in conducting independent factual research without allowing L.S. to respond, we find the CPO hearing was not a "full hearing" within the meaning of R.C. 3113.31. *See D.M.W. v. E.W.*, 10th Dist. No. 17AP-359, 2018-Ohio-821, ¶ 13 ("[t]he trial court's failure to conduct a 'full hearing' as contemplated under R.C. 3113.31 constitutes reversible plain error"), citing *Tarini* at ¶ 18-20 (the trial court's failure to conduct a "full hearing" under R.C. 3113.31 constitutes both a

violation of the statute and a deprivation of due process). Accordingly, we sustain L.S.'s fourth and fifth assignments of error and the portions of his first and second assignments of error we construe as relating to the trial court's conduct at the conclusion of the hearing. Thus, we vacate the CPO granted as a result of the hearing and remand the matter to the trial court for a new hearing on J.S.'s petition for a CPO.

## IV.  Sixth and Seventh Assignments of Error – Findings of Fact and Manifest Weight

{¶ 26}  L.S.'s sixth and seventh assignments of error allege deficiencies in the trial court's granting of the CPO.  However, having determined in our resolution of L.S.'s first five assignments of error that L.S. did not receive a full hearing on his CPO as a result of the trial court's independent factfinding, L.S.'s sixth and seventh assignments of error are moot.

## V.  Disposition

{¶ 27}  Based on the foregoing reasons, the trial court erred when it conducted independent factfinding on L.S.'s proffered evidence without affording him an opportunity to respond, depriving L.S. of a full hearing within the meaning of R.C. 3113.31 on the petition for a CPO.  Additionally, to the extent the trial court reviewed evidence submitted by J.S. without affording L.S. an opportunity to review and respond to the evidence, the trial court erred.  Having sustained L.S.'s fourth and fifth assignments of error, sustained in part and overruled in part L.S.'s first and second assignments of error, and overruled L.S.'s third assignment of error, rendering moot L.S.'s sixth and seventh assignments of error, we reverse the order of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch granting the CPO, vacate the CPO, reinstate the temporary CPO, and remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

SADLER, P.J., and BROWN, J., concur.

————————————