[Cite as *C.W. v. J.S.*, 2022-Ohio-1951.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| C.W., | : | |
| Petitioner-Appellee, | : | |
| | : | No. 21AP-284 |
| v. | : | (C.P.C. No. 21DV-440) |
| J.S., | : | (REGULAR CALENDAR) |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on June 9, 2022

**On brief:** *O'Keefe Family Law*, and *Bobbie Corley O'Keefe*, for appellee. **Argued:** *Bobbie Corley O'Keefe*.

**On brief:** *The Nigh Law Group, LLC*, and *Courtney A. Zollars*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

KLATT, J.

{¶ 1} Respondent-appellant, J.S., appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting the petition for a domestic violence civil protection order ("DVCPO") filed by petitioner-appellee, C.W. For the following reasons, we affirm.

{¶ 2} At the time of the events giving rise to this appeal, appellant and appellee resided together with their five-year-old son. The parties had never married or obtained court orders allocating parental rights and responsibilities for their son.

{¶ 3} Appellee filed a petition for a DVCPO on March 22, 2021, alleging that appellant assaulted her on March 15, 2021. In the petition, appellee listed a previous

domestic violence/assault case she filed against appellant in 2019 which resulted in a dismissal.

{¶ 4} In an addendum to the petition, appellee claimed that appellant "became irate" when she requested that he move his car to allow her to exit their driveway. (Addendum to Petition.) Appellant pulled a chair out from under appellee, causing her to fall to the floor. Due to "past escalations," appellee began recording the incident on her cell phone. *Id.* Appellant tackled appellee and removed the cell phone from her hand. He then chased and screamed at their son. When appellee attempted to intervene, appellant choked her and pushed her to the floor. Appellee escaped with her son through a window and called the police. While appellee was on the phone, appellant said, "Bring the cops[,] I'll shoot them all." *Id.* Appellant then brought a large gun and a bag of ammunition into the living room. The police arrived and told appellant to leave. Appellee and her son stayed in a hotel from March 15 to March 19, 2021, when they returned home. Appellant came to the house the next day; appellee called the police. Appellee asserted that "I fear for my life." *Id.*

{¶ 5} Appellee requested an ex parte DVCPO, which the trial court granted the same day. The trial court scheduled a "full hearing" on the matter for March 29, 2021. (Ex Parte DVCPO at 5.)

{¶ 6} Following several continuances occasioned by unsuccessful service on appellant, the trial court conducted a full evidentiary hearing on the petition on May 7, 2021. Both parties appeared pro se. At the outset, the trial court noted that appellant had only recently been served with the ex parte DVCPO.[1] When asked if he had sufficient time to review the order, appellant stated that he had "some opportunity to review" it. (May 7, 2021 Tr. at 4.) Thereafter, the trial court asked appellant if he wished to speak to an attorney prior to the commencement of testimony. Appellant responded, "I don't think that's necessary at this point." *Id.* at 4-5. The trial court cautioned appellant that once the hearing began, there would be no opportunity to reconsider this decision. Appellant indicated that he understood.

{¶ 7} Appellant then stated, "my main concern here today is that I have not seen my son in a month and a half." *Id.* at 5. The trial court informed appellant that the hearing concerned only the DVCPO, not visitation with his son. Appellant signified that he

---

[1] The record reveals that appellant was personally served with the petition on April 28, 2021.

understood. The court then told appellant that if he wished to consult an attorney, the court would grant a continuance so he could do so. Appellant responded, "Let's go ahead and proceed." *Id.* at 6.

{¶ 8} Under direct questioning by the trial court, appellee testified that she and appellant owned and lived in a home together with their son until March 2020 when appellant "signed off on the mortgage." *Id.* at 7. According to appellee, appellant did not immediately leave the residence; rather, he was "removed" from the home in May 2020. *Id.* Appellee did not elaborate on the circumstances surrounding appellant's removal.

{¶ 9} In response to questioning by the trial court, appellee asserted that there had been other "incidents of violence" between the parties. *Id.* Specifically, in 2019, appellee pursued domestic violence charges against appellant; however, appellant called her from jail and persuaded her to drop the charges.

{¶ 10} Appellee averred that she filed the present petition for a DVCPO following an incident at her home on March 15, 2021. According to appellee, appellant was there to assist with their son. When appellee asked appellant to move his car, "[t]he situation became violent and he ended up choking me twice, pulling a chair out from under me and threatening me with a semi-automatic weapon." *Id.* at 8.

{¶ 11} When asked how she got away from appellant, appellee testified that appellant momentarily released her after he had "pinned" her down in the hallway. *Id.* at 10. At that point, she locked herself and her son in the spare room and exited through the window. When she went back inside the house to retrieve her son's coat and shoes, she saw appellant with a gun—an "AR or AK"—in his hand. *Id.* at 11. Appellant also had his "gun bag with the ammo in it." *Id.* As he had in the past, appellant threatened to shoot appellee. Because she did not have her car keys and appellant was parked behind her in the driveway, she sat in her car and called the police.

{¶ 12} When questioned about the gun, appellee asserted that appellant stored it in the spare room. According to appellee, "[e]very time we would argue, he would decide to bring it out and threaten to shoot me and the cops. That's what he did that day as well." *Id.* at 8.

{¶ 13} At the conclusion of appellee's direct testimony, the trial court asked appellant if he wished to question appellee. Appellant replied, "I have a lot of questions. I don't know where to start." *Id.* at 13. Appellant then said he wanted to "state something

for the record." *Id.* The trial court again asked appellant if he had any questions for appellee. Appellant responded, "Yes. When can I see my son?" *Id.* The trial court reminded appellant that the instant proceeding concerned only the DVCPO, not the allocation of parental rights and responsibilities. Thereafter, the trial court again asked appellant if he had any questions for appellee. Appellant replied, "I don't believe so." *Id.*

{¶ 14} At appellant's request, the trial court permitted him to "give a statement." *Id.* at 14. To that end, appellant testified that he and appellee lived together with their son until he moved out in March 2020. However, because appellee wanted to "try things again," he moved back into the house in August 2020. *Id.*

{¶ 15} Appellant further testified that the night before the March 15, 2021 incident, appellant returned home from work and parked his car behind appellee's vehicle in the driveway. On the morning of March 15, 2021, appellee woke appellant by punching him in the face and screaming at him to move his car out of the driveway. Thereafter, appellant decided to go to the shooting range to "blow off some steam." *Id.* at 16. Appellant kept his gun in a box and did not remove it in preparation for his trip to the shooting range. He loaded ammunition into a magazine, which he kept separate from the gun. As appellant loaded the ammunition, appellee "freaked out" and "jump[ed] out of the window" because she thought he was going to point the gun at her. *Id.* at 15. Appellant testified that he was "never aggressive" toward appellee and "never pointed a weapon" at her. *Id.* at 15, 16-17.

{¶ 16} After appellant testified, the trial court asked appellee to respond. Appellee denied striking appellant in the face. She reiterated her testimony that appellant took her cell phone while she was recording the incident. Appellee averred that both she and her son could recount the entire event for the court if necessary. After this statement, appellant and appellee exchanged heated words about the incident:

> [Appellant]: Did he watch you hit me?
>
> [Appellee]: He watched you hit me and choke me.
>
> [Appellant]: I did not hit you.
>
> [Appellee]: So if he doesn't punch then it's not a hit.
>
> [Appellant]: I didn't put my hands on you.

*Id.* at 17-18.

{¶ 17} Following this exchange, the trial court asked appellant about the 2019 domestic violence incident appellee referenced in her testimony. Appellant described the incident as a "disagreement" where "she said that I hit her [and] I said that she hit me." *Id.* at 18. Police officers called to the scene believed appellee's version of the events and transported appellant to jail; however, appellee later "dropped the charges." *Id.*

{¶ 18} Thereafter, the trial court stated, "I believe that [appellee] has testified credibly here today that at least two domestic violence incidents did occur." *Id.* at 20. The court indicated that it would grant the DVCPO for a term of five years and warned appellant not to contact appellee. The court then advised appellant that if he wished to have parenting time with his child, he would have to file a motion requesting court orders to that effect.

{¶ 19} Thereafter, the trial court granted appellant's request to "make a statement." *Id.* at 20. To that end, appellant averred:

> I'm not sure why * * * this is going on now when she has attacked me many, many times, and I have never tried to come at her like this.
>
> She stole $7,000 of our tax returns. It was mine. She stole it, and then threw all my stuff out of the house. That's why she is getting a protection order, because she thinks that I'm going to attack her or something, which is just made up in her own head. I'm really not a dangerous person.

*Id.*

{¶ 20} After the court interjected "Okay," appellant attempted to continue his statement; however, he averred only "I have no desire" before the court interjected:

> I believe that [appellee] has testified credibly here today that at least two domestic violence incidents did occur. Strangulation in the state of Ohio is a felony.
>
> [Appellee] has testified that you strangled her. She has testified that she had to crawl outside the window, go lock herself in her car; that she felt threatened by you pulling the weapons out.

*Id.* at 20-21.

{¶ 21} After a brief discussion about the duration of the DVCPO and logistics related to visitation with his son, appellant averred that appellee "has also strangled me and hit me and everything." *Id.* at 21. The court noted that appellant had never filed for a DVCPO as

had appellee. Appellant acknowledged as much; however, he averred that appellee "has literally shoved me out of a window." *Id.*

{¶ 22} Following this exchange, the court and parties held a discussion off the record. After the hearing resumed, appellant reiterated that he did not strangle appellee. The court then advised appellant of the parameters of the DVCPO and that he had seven days to retrieve his property from the parties' home.

{¶ 23} The court issued the DVCPO on May 7, 2021, for a term of five years.

{¶ 24} Appellant timely appeals, assigning the following error:

> The trial court erred when they failed to afford the appellant a full hearing, therefore denying him his right to due process and the opportunity to be heard.

{¶ 25} In his sole assignment of error, appellant argues the trial court denied his due process rights by failing to afford him the opportunity to be heard at a "full hearing." Specifically, appellant asserts the trial court interrupted his testimony, did not allow him to call witnesses on his behalf, issued a decision on the DVCPO prior to the completion of his testimony, and did not permit him to cross-examine appellee. Appellant maintains the trial court's actions deprived him of the right to present a complete defense to the allegations in the petition.

{¶ 26} Here, appellee sought a DVCPO pursuant to R.C. 3113.31. Under R.C. 3113.31(C), "[a] person may seek relief * * * on the person's own behalf * * * by filing a petition with the court," stating "[a]n allegation that the respondent engaged in domestic violence against a family or household member of the respondent * * *, including a description of the nature and extent of the domestic violence." R.C. 3113.31(C)(1). The petition also shall contain "[t]he relationship of the respondent to the petitioner" and "[a] request for relief under this section." R.C. 3113.31(C)(2) and (4).

{¶ 27} If a petitioner files a petition under R.C. 3113.31 and requests an ex parte order, the trial court must hold a hearing the same day and, for good cause shown, may enter an ex parte temporary order. R.C. 3113.31(D)(1). When the court issues an ex parte order, "the court shall schedule a full hearing for a date that is within seven court days after the ex parte hearing." R.C. 3113.31(D)(2)(a). As noted above, the court issued an ex parte order on March 22, 2021 and scheduled the matter for a "full hearing" on March 29, 2021.

(Ex Parte DVCPO at 5.)  Following several continuances based upon the failure of personal service on appellant, the hearing was not held until May 7, 2021.[2]

{¶ 28}  In general, the decision to grant or deny a DVCPO pursuant to R.C. 3113.31 is left to the sound discretion of the trial court.  *J.S. v. L.S.*, 10th Dist. No. 19AP-400, 2020-Ohio-1135, ¶ 15, citing *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6. (Further citations omitted.)  Appellant does not contend that the trial court abused its discretion in granting the DVCPO or that no competent, credible evidence supported the trial court's decision.  Rather, appellant alleges that the trial court did not grant him a "full hearing" within the meaning of R.C. 3113.31.  Where an appeal requires an analysis of R.C. 3113.31, this court applies a de novo standard of review.  *D.M.W. v. E.W.*, 10th Dist. No. 17AP-359, 2018-Ohio-821, ¶ 11, citing *Hope Academy Broadway Campus v. Ohio Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 13.

{¶ 29}  In *D.M.W.*, we noted that although the term "full hearing" is not defined in R.C. 3113.31, a full hearing on a DVCPO petition "is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken."  (Citations omitted.) *Id.* at ¶ 12.  "[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments."  (Citations omitted.)  *Id.*

{¶ 30}  In support of his assignment of error, appellant cites *Tarini v. Tarini*, 10th Dist. No. 12AP-336, 2012-Ohio-6165; *Houseman v. Houseman*, 4th Dist. No. 831, 1981 Ohio App. LEXIS 13378; *Felton v. Felton*, 79 Ohio St.3d 34 (1997); and *Spigos v. Spigos*, 10th Dist. No. 03AP-682, 2004-Ohio-757.

{¶ 31}  In *Tarini,* the petitioner sought a CPO against his brother.  During counsel's direct examination of the petitioner, the trial court announced that because the petitioner had met his threshold showing for a CPO, the court was halting counsel's direct

---

[2] The court must hold the full hearing on the date scheduled under R.C. 3113.31(D)(2)(a) unless the court grants a continuance of the hearing under any of the circumstances set forth in R.C. 3113.31(D)(2)(a)(i) through (iv).  As relevant here, R.C. 3113.31(D)(2)(a)(i) permits a continuance where "[p]rior to the date scheduled for the full hearing under [R.C. 3113.31(D)(2)(a)], the respondent has not been served with the petition filed pursuant to [R.C. 3113.13(D)(2)(a)] and notice of the full hearing."  R.C 3113.31(D)(2)(b) provides that "[a]n ex parte order issued under this section does not expire because of a failure to serve notice of the full hearing upon the respondent before the date set for full hearing under division (D)(2)(a) of this section or because the court grants a continuance under that division."

examination. The petitioner's counsel inquired whether he would be able to call petitioner back to the witness stand to conduct redirect examination. The court assured counsel that he would be able to do so. The court then advised the respondent's counsel that he could proceed with his case-in-chief, including cross-examination of the petitioner, who remained on the witness stand. At the conclusion of the respondent's case-in-chief, the court did not permit the petitioner's counsel to conduct redirect examination of the petitioner. The court then denied the petition for the CPO, finding that the petitioner's evidence did not establish a prima facie case for such an order. On appeal, this court found that the trial court's failure to allow the petitioner to offer additional evidence through redirect examination, as it had previously indicated it would, deprived the petitioner of a full hearing under R.C. 3113.31. Here, appellant did not suggest that he intended to present additional evidence later in the hearing, nor did the trial court represent to appellant that he would be provided the opportunity to present additional evidence and then renege on that assurance.

{¶ 32} In *Houseman*, the nephew of an elderly woman filed an application seeking appointment as her guardian. At the probate court hearing, the nephew presented two physicians who testified to the aunt's condition. The aunt sought to introduce the testimony of friends and neighbors as lay witnesses on her behalf; however, the trial court refused to allow that testimony. The court entered an order declaring her incompetent by reason of advanced age and mental and physical infirmities and appointing her nephew as her guardian. On appeal, the aunt contended that the trial court's refusal to allow the lay witness testimony violated her due process rights. The court of appeals agreed, noting that "[o]ne of the fundamental due process rights is the right to present witnesses in one's behalf," *id*. at *4, citing *Grieb v. Dept. of Liquor Control,* 153 Ohio St. 77 (1950), and that " '[l]itigants are entitled to a fair and impartial trial, and in order to have this their witnesses should be permitted to testify, under the rules of the court, within the proper bounds of judicial discretion, and under the law governing testimony of witnesses.' " *Id*., quoting *Fessenden v. Fessenden,* 32 Ohio App. 16 (9th Dist.1928). The court found that the trial court had "abused its discretion and abridged [the aunt's] constitutional rights to due process of law by excluding testimony of her lay witnesses." *Id*. at *9. In contrast, in the present case, appellant never indicated that he would present witnesses to testify on his behalf.

{¶ 33} In *Felton*, 79 Ohio St.3d 34, the parties ended their marriage by decree of dissolution in 1993. In 1994, the ex-wife filed a DVCPO petition pursuant to R.C. 3113.31 requesting that respondent be restrained from assaulting, harassing, threatening, or otherwise intimidating her or her children. The trial court held a hearing on the petition, at which the petitioner and several of her witnesses testified. At the conclusion of the petitioner's case-in-chief, the respondent moved for a directed verdict. Concluding that the petitioner had presented a prima facie case that she had been the victim of domestic violence, the trial court denied the motion for directed verdict. The respondent rested his case without presenting any evidence. The court then found that the petitioner had not met her burden of proving the domestic violence by a preponderance of the evidence and dismissed the action for lack of evidence.

{¶ 34} The court of appeals held that because the parties' decree of dissolution included a provision prohibiting each party from harassing or interfering with the other party, a DVCPO issued pursuant to R.C. 3113.31 was unnecessary and superfluous. Noting the provision in R.C. 3113.31(G) that "[t]he remedies and procedures provided in this section are in addition to, and not in lieu of, any other available civil or criminal remedies," the Supreme Court of Ohio concluded that "nothing in the statutes precludes the court from issuing a protection order even though the no-harassment provision of the dissolution decree continues to govern the parties' actions towards each other." *Felton* at 37. The instant case does not present the same legal issue as that addressed in *Felton*; as such, it is inapposite.

{¶ 35} In *Spigos*, 10th Dist. No. 03AP-682, 2004-Ohio-757, counsel for the DVCPO petitioner informed the trial court at the outset of the hearing that the petitioner had two professional witnesses en route to court. During the petitioner's direct testimony, the trial court abruptly requested to speak with counsel off the record. The court subsequently entered judgment against the petitioner on the basis that the petitioner had failed to prove her case. On appeal, the petitioner argued that she was not afforded a "full hearing" under R.C. 3113.31 because the trial court only allowed her to call one witness (herself), did not allow her to complete her testimony, did not allow her to call any additional witnesses even though her counsel had informed the court that professional witnesses would testify on her behalf, and did not allow her the opportunity to present arguments regarding the evidence presented. This court found that the petitioner was not afforded a meaningful opportunity

to be heard and thus was denied a full hearing under R.C. 3113.31 "where the trial court rendered judgment before appellant had the opportunity to conclude her testimony, to offer other evidence on her behalf or to present arguments." *Id.* at ¶ 16.

{¶ 36} Although the legal issues raised in *Spigos* are somewhat similar to those raised by appellant in the instant case, *Spigos* is distinguishable.  We note that in the present case, both parties appeared pro se.  Appellant twice declined the opportunity for a continuance to obtain counsel.  Although appellant was free to do so, it is axiomatic that one who acts as his own attorney does so at his own peril.  Ohio case law continues to hold that "pro se litigants are expected to possess knowledge of the law and legal procedures and, accordingly, are held to the same standard as litigants who have legal representation." *JPMorgan Chase Bank, N.A. v. Cloyes*, 10th Dist. No. 20AP-107, 2021-Ohio-3316, ¶ 9, citing *In re Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, ¶ 22. (Further citation omitted.)  "Pro se litigants can neither expect nor demand special treatment, but instead must be treated the same as litigants represented by counsel." *Id.,* citing *Cox v. Dayton Pub. Schools Bd. of Edn.*, 147 Ohio St.3d 298, 2016-Ohio-5505, ¶ 6.

{¶ 37} Moreover, appellant's arguments are without merit.  Appellant complains that he was not afforded an opportunity to cross-examine appellee; however, the record belies this assertion.  After appellee presented her case-in-chief, the trial court asked appellant if he wished to question appellee.  Appellant replied that he wanted to make a statement; however, the statement he made did not involve any issue related to the DVCPO. The trial court again asked appellant if he had any questions for appellee.  Appellant responded in the negative.  Contrary to appellant's contention, the trial court provided him the opportunity to cross-examine appellee; however, he chose not to do so.

{¶ 38} Appellant's claim that the trial court granted the DVCPO prior to the completion of his testimony is also belied by the record.  The trial court permitted both parties to testify regarding the events at issue.  During his initial testimony, appellant averred that appellee initiated the incident by striking him in the face and screaming at him. In response, he decided to "blow off some steam" at the shooting range; accordingly, he retrieved his gun (which he never removed from the box he kept it in) and ammunition. (May 7, 2021 Tr. at 16.)  He testified that he was never aggressive with appellee and never pointed his gun at her.  After the trial court sought a response from appellee, the parties engaged in a heated discussion regarding the incident, during which appellant again denied

striking or choking appellee. Thereafter, the trial court, crediting appellee's testimony, indicated that it would issue a DVCPO for a five-year term. After this statement, the trial court permitted appellant to offer additional testimony. To that end, appellant opined that appellee sought the DVCPO because she was afraid appellant would retaliate against her after she stole money from him and had him removed from their home. Appellant testified that appellee's fears of violence were unwarranted because he was not a "dangerous person." *Id*. at 20. Although the hearing, including the manner in which the parties presented their evidence, was somewhat informal and unstructured, perhaps given the parties' choice to proceed pro se, the record reveals that appellant was afforded ample opportunity to present his testimony and arguments prior to the trial court's formal issuance of the DVCPO.

{¶ 39} Further, what appellant refers to as the trial court's interruptions more accurately reflect the trial court's efforts at redirecting and refocusing appellant's testimony to the relevant issues. Appellant repeatedly raised issues related to visitation with his son; the trial court advised appellant that issues related to parental rights and responsibilities were not the subject of the DVCPO hearing and redirected appellant's testimony to the matter at issue. To the extent appellant cites to that portion of the hearing where the trial court appears to cut off his statement that began "I have no desire," we note that this occurred well after appellant had already presented his version of the incident. *Id*. Furthermore, there is no indication in the record that appellant requested permission to continue his statement. In addition, appellant does not allege what he would have stated had the trial court permitted him to continue his statement or how he was prejudiced by the trial court's action.

{¶ 40} To the extent appellant argues that he was denied due process by the trial court's failure to inquire if he had additional evidence to present or if he wished to make a closing argument, we note that appellant cites no case law requiring the trial court to make such inquiries. Moreover, appellant fails to allege what additional evidence he would have presented or what additional arguments he would have made if provided the opportunity to do so.

{¶ 41} Finally, as to appellant's complaint that the trial court did not allow him to call witnesses, there is no indication in the record that appellant ever indicated that he intended to call witnesses to testify on his behalf.

{¶ 42} In *J.S.*, 10th Dist. No. 19AP-400, 2020-Ohio-1135, this court considered challenges related to the informal nature of a DVCPO hearing. On appeal from the trial court's grant of a DVCPO, the respondent argued that the trial court failed to afford him a "full hearing" within the meaning of R.C. 3113.31. The respondent raised issues similar to those asserted in the present case. Finding no merit to those arguments, this court noted that both parties appeared pro se at the hearing, that the trial court permitted both parties to testify as to their respective positions, and that the trial court's alleged interruptions were necessary to redirect and refocus the parties' testimony to the relevant issues. We characterized the hearing as "somewhat freeform, perhaps deliberately so, in order to allow two pro se parties the opportunities to be fully heard" and concluded that "[a] pro se hearing on a CPO can still be a full hearing within the meaning of R.C. 3113.31 even where the hearing lacks 'formality and structure.' " *Id.* at ¶ 18, citing *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 34.[3]

{¶ 43} Here, the trial court allowed appellant, who appeared pro se by choice, to present his own testimony and arguments in support of his position and did not preclude him from cross-examining appellee or offering additional evidence through witness testimony. Under the circumstances presented herein, we conclude that appellant was afforded a "full hearing" within the meaning of R.C. 3113.31. We thus overrule appellant's sole assignment of error.

{¶ 44} Having overruled appellant's sole assignment of error, we affirm the order of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, issuing a DVCPO to appellee.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

_____

[3] This court ultimately reversed the order issuing the DVCPO, finding that the respondent was not afforded a "full hearing" within the meaning of R.C. 3113.31 because the trial court conducted independent factfinding on the petitioner's proffered evidence without affording the respondent an opportunity to respond and reviewed evidence submitted by the petitioner without affording the respondent the opportunity to review and respond to the evidence. *Id.* at ¶ 25, 27. Appellant raises no such evidentiary issues in the present case.