[Cite as *C.R. v. Headley*, 2025-Ohio-1745.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [C.R.], | : | |
| Petitioner-Appellant, | : | |
| | : | No. 24AP-413 |
| v. | : | (C.P.C. No. 24DV-1157) |
| Cameron Headley, | : | (REGULAR CALENDAR) |
| Respondent-Appellee. | : | |

D E C I S I O N

Rendered on May 15, 2025

**On brief:** *Capital University Family Advocacy Clinic*, and *Caroline A. Lahrmann*, for appellant. **Argued:** *Caroline A. Lahrmann.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

JAMISON, P.J.

{¶ 1} Petitioner-appellant, C.R., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, denying her petition for a Civil Protection Order ("CPO") against respondent-appellee, Cameron Headley. For the following reasons, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 10, 2024, C.R. filed a petition, pursuant to R.C. 3113.31, seeking a CPO against Headley. In her petition, C.R. alleged a pattern of threatening conduct by Headley. It was alleged that on July 7, 2023, Headley kidnapped her, punched her, strangled her to unconsciousness, and threatened to kill her. At the time, criminal charges were pending in Franklin C.P. case No. 23CR-3487. A Temporary Protection Order ("TPO")

was issued in that matter. Additional allegations in C.R.'s petition included Headley creating various social media accounts to follow her accounts and making threats to individuals at a local bar that C.R. and her family frequented.

{¶ 3} Upon filing her petition, the trial court issued an ex parte domestic violence CPO.

{¶ 4} A hearing was held on June 18, 2024. At the beginning of the hearing, counsel for C.R. informed the court that she was going to present the testimony of two witnesses, C.R. and K.B.

{¶ 5} C.R. testified that she was previously in a relationship with Headley for approximately five years. The two were engaged and married, but Headley never turned in the marriage certificate, so they were never legally married. They resided together from "2018 until 2023." (Tr. at 11.) The relationship between C.R. and Headley ended on July 7, 2023. On that day, C.R. woke up and tried to leave the residence. C.R. and Headley had an argument, and every time C.R. tried to leave, she was "beaten to the ground." (Tr. at 12.) C.R. testified that she was held against her will for four hours. Headley took her keys and phone and strangled her multiple times. At one point, she was strangled unconscious and Headley slapped her to wake her up. C.R. alleged that Headley repeatedly struck her in the head. C.R. testified that she feared for her life due to Headley's continued attempts to contact her and because he lived near her. She received a TPO in the pending criminal case arising out of that incident but wanted a long-term protection order.

{¶ 6} After C.R. testified regarding the July 7, 2023 incident, the trial court stopped her direct examination. A discussion regarding the TPO in the pending criminal case ensued between the parties and the court. The parties disagreed as to the effect of the ex parte CPO on the TPO. Counsel for C.R. asserted that as soon as the ex parte CPO was issued, the TPO was removed. However, counsel for Headley argued that the TPO was still in place. The record indicates some confusion over whether the parties were discussing a TPO or a no-contact order as part of Headley's bond conditions. At times, the court and parties are referring to a criminal TPO, and at other points, the parties are discussing a no-contact order. (Tr. 15-22.) Based on the record, it appears that the court believed that nothing in the ex parte CPO proceedings could provide C.R. with more protection than what was currently in place in the criminal case. As such, the court explained that the only

options were to not go forward with the CPO hearing, or the matter could be stayed and placed on inactive status until the resolution of the criminal case. However, the court indicated that it would not permit the case to be stayed and placed on inactive status.

{¶ 7} Counsel for Headley suggested that the trial court adjudicate the matter and find that the evidence was insufficient to support the petition because the threat was nearly one year old at the time of the hearing. Counsel for Headley then requested that the case be dismissed. Counsel for C.R. responded that there have been other concerning behaviors since the July 7, 2023 incident, and C.R. intended to present testimony regarding those behaviors. Without taking anymore testimony, the court granted Headley's motion to dismiss and terminated the ex parte CPO.

{¶ 8} The trial court issued an entry denying C.R.'s petition for a CPO. In that entry, the court stated, "[C.R.] failed to allege any recent threats of harm or physical violence and has not demonstrated that [C.R.] or others are in immediate and present danger of domestic violence from [Headley]." (June 18, 2024 Entry Denying Petition for CPO.) The entry also stated, "the Petition is, on its face, deficient and fails to state any claim upon which any Civil Protection Order would be appropriate." *Id.*

{¶ 9} C.R. now brings this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as trial court errors:

> [1.] The trial court erred as a matter of law when it held it could not grant a CPO because it found the criminal TPO did not terminate upon the issuance of the Ex Parte CPO.
>
> [2.] The trial court erred as a matter of law, violated [CR.]'s right to due process, and committed plain error when it did not hold a full hearing on [C.R.]'s Petition for CPO.
>
> [3.] The trial court erred as a matter of law, violated [C.R.]'s right to due process, and committed plain error when it entertained and granted Headley's motion to dismiss before [C.R.] completed her case in chief.
>
> [4.] The trial court erred as a matter of law and acted against the manifest weight of the evidence when it granted Headley's motion to dismiss because [C.R.] did not allege new acts or threats of domestic violence.

[5.] The trial court erred as a matter of law and acted against the manifest weight of the evidence when it held [C.R.]'s Petition for CPO was "on its face, deficient."

[6.] The trail court erred as a matter of law and acted against the manifest weight of the evidence when it held [C.R.] did not prove by a preponderance of the evidence that she was entitled to a CPO under R.C. 3113.31

## III. STANDARD OF REVIEW

{¶ 11} In cases "where an appeal requires an analysis of R.C. 3113.31, [the court] appl[ies] a de novo standard of review." *I.S. v. I.S.S.*, 2024-Ohio-2083, ¶ 17 (10th Dist.). Furthermore, failure to timely notify the trial court of a possible error waives all but plain error. *H.C. v. R.C.*, 2016-Ohio-668, ¶ 9 (10th Dist.). "In the civil context, an appellate court only applies the plain error doctrine in 'extremely rare cases' when the asserted error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 123 (1997).

{¶ 12} A person may seek a CPO on the person's own behalf by filing a petition with the court. R.C. 3113.31(C). A petition for a domestic violence CPO shall contain the following:

> (1) An allegation that the respondent engaged in domestic violence against a family or household member of the respondent or against a person with whom the respondent is or was in a dating relationship, including a description of the nature and extent of the domestic violence;
>
> (2) The relationship of the respondent to the petitioner, and to the victim if other than the petitioner;
>
> . . .
>
> (4) A request for relief under this section.

R.C. 3113.31(C)(1), (2), and (4). If the petition requests an ex parte order, the court is to hold a hearing the same day and may enter an ex parte temporary order. R.C. 3113.31(D)(1). If an ex parte order is issued, the court shall schedule a "full hearing" within seven court days. R.C. 3113.31(D)(2)(a).

{¶ 13} R.C. 3113.31 does not define the term "full hearing." Ohio courts have determined that a full hearing " 'is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.' " *Tarini v. Tarini*, 2012-Ohio-6165, ¶ 14 (10th Dist.), quoting *Deacon v. Landers*, 68 Ohio App.3d 26, 30 (4th Dist. 1990). "[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments." *Deacon* at 30. Moreover, because the issue of whether a litigant was afforded a full hearing involves the constitutional right of due process, the litigant is not required to proffer the evidence the litigant would have presented. *Tarini* at ¶ 17-18.

## IV. LEGAL ANALYSIS

{¶ 14} In her first assignment of error, C.R. alleges that the trial court erred when it mistakenly believed it could not grant a CPO because the TPO from Headley's criminal case did not terminate upon the issuance of the ex parte CPO. However, although there was a discussion on the record about the effect the ex parte CPO had on the TPO, the trial court's entry denying C.R.'s petition was silent on that issue. It is well-settled that "a trial court speaks through its journal entry, not by oral pronouncement." *Dennison v. Dennison*, 2020-Ohio-2800, ¶ 25 (10th Dist.).

{¶ 15} As such, C.R.'s first assignment of error is overruled because the trial court's decision was not based on the existence of a TPO in Headley's criminal case.

{¶ 16} For ease of discussion, we address C.R.'s remaining assignments of error out of order. In her fifth assignment of error, C.R. alleges that the trial court erred as a matter of law and acted against the manifest weight of the evidence when it held that her petition for a CPO was deficient on its face. Pursuant to R.C. 3113.31(C), a petition for a CPO shall contain: an allegation of domestic violence against the respondent; the nature of the relationship between the petitioner and the respondent; and a request for relief. "Domestic violence" is defined in R.C. 3113.31(A)(1)(a) as "[a]ttempting to cause or recklessly causing bodily injury" to a family or household member and/or "[p]lacing [a family or household member] by the threat of force in fear of imminent serious physical harm."

{¶ 17} In the June 18, 2024 entry denying C.R.'s petition for a CPO, the trial court stated, "the Petition is, on its face, deficient and fails to state any claim upon which any [CPO] would be appropriate." (June 18, 2024 Entry Denying Petition for CPO.) The entry does not explain how C.R.'s petition was deficient. A review of the petition reveals that C.R. alleged that on July 7, 2023, Headley kidnapped her, punched her, strangled her to unconsciousness, and threatened to kill her. These allegations fit the definition of domestic violence defined in R.C. 3113.31(A)(1)(a). These alleged actions caused physical harm to C.R. and caused her to believe Headley would cause her imminent serious physical harm. The record indicates that the trial court was persuaded, in part, by the primary allegations of domestic violence being approximately one year old. However, the question under R.C. 3113.31 is whether a reasonable person in C.R.'s position would be in fear of imminent serious physical harm. *Maccabee v. Maccabee*, 1999 Ohio App. LEXIS 2992, *6 (10th Dist. June 29, 1999). The lapse in time between the alleged domestic violence and the petition for a CPO is not dispositive of this issue. *Id*. R.C. 3113.31 does not require new allegations before a CPO may be issued.

{¶ 18} In addition to the allegations of domestic violence, the petition described C.R.'s relationship with Headley as living as a spouse by currently cohabitating or having cohabitated within five years prior to the alleged act of domestic violence. The petition requested as relief the issuance of a domestic violence CPO. As such, C.R.'s request met the statutory requirements for a petition for a domestic violence CPO and the trial court erred in determining that C.R.'s petition was deficient on its face. R.C. 3113.31(C).

{¶ 19} Based on the foregoing, C.R.'s fifth assignment of error is sustained.

{¶ 20} C.R.'s second and third assignments of error are related and will be addressed together. In her second assignment of error, C.R. alleges that the trial court committed plain error and violated her right to due process by failing to hold a full hearing on her petition for a CPO. In her third assignment of error, C.R. contends that the trial court erred in considering Headley's motion to dismiss prior to her completing her case-in-chief. At the hearing on C.R.'s petition for a CPO, the court stopped C.R.'s testimony shortly into her direct examination. A discussion between the court and counsel ensued. Despite counsel for C.R. informing the court that C.R. would testify regarding more recent conduct by

Headley and that another witness would be testifying, the court dismissed C.R.'s petition without permitting more evidence or testimony.

{¶ 21} Upon review of the record, we find that the trial court failed to hold a full hearing as required by R.C. 3113.31. In *Tarini*, 2012-Ohio-6165, at ¶ 15-16 (10th Dist.), this court found that the trial court failed to hold a full hearing. The trial court violated the petitioner's due process rights where the trial court stopped petitioner's direct examination and did not allow him to continue presenting evidence after the respondent's case-in-chief. Similarly, in *Spigos v. Spigos*, 2004-Ohio-757, ¶ 16 (10th Dist.), it was determined that the trial court did not hold a full hearing where it interrupted the petitioner's testimony, met with counsel off the record, did not allow the petitioner to continue testifying or present additional evidence, and denied the petition for a CPO. In *H.C.*, 2016-Ohio-668, at ¶ 13-14 (10th Dist.), this court found that the trial court did not conduct a full hearing where it did not allow respondent to present evidence or make a closing argument before granting the petition.

{¶ 22} On the other hand, in *I.S.*, 2024-Ohio-2083 (10th Dist.), it was determined that the trial court conducted a full hearing. In *I.S.*, prior to each witness testifying, the trial court inquired as to the witness's name, relationship to the parties, and the nature of their testimony. *Id*. at ¶ 20. If a witness's testimony was deemed irrelevant, the trial court, upon consent of the parties, dismissed the witness. *Id*. In determining that a full hearing was held, this court noted that the trial court afforded each party an equal amount of time to present their cases, and its efforts to limit the hearing to relevant testimony were "exceedingly reasonable." *Id*.

{¶ 23} This matter is similar to the cases in *Tarini* and *Spigos*. In all three cases, the trial courts interrupted the testimonies of the petitioners and then ruled on the petitions without allowing more testimony or evidence. On the other hand, this matter is readily distinguishable from *I.S.* In *I.S.*, the trial court gave each party an equal opportunity to present his or her case. Furthermore, the trial court analyzed the content of each of the potential witness's testimony before dismissing them as irrelevant. Here, like the trial courts in *Tarini* and *Spigos*, the trial court simply cut off C.R.'s testimony and did not allow any further evidence from either party. In sum, the trial court in this matter deprived both C.R. and Headley of meaningful opportunities to be heard. As such, we conclude that this

case involves one of the exceptional circumstances where error, despite the lack of an objection, seriously affected the basic fairness, integrity, or public reputation of the judicial process. Thus, the trial court's failure to hold a full hearing on C.R.'s petition constitutes plain error.

{¶ 24} Based on the foregoing, we sustain C.R.'s second and third assignments of error.

## IV. CONCLUSION

{¶ 25} Having sustained C.R.'s second, third, and fifth assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, and remand for further proceedings consistent with this decision. Because C.R.'s fourth and sixth assignments of error allege that that the trial court acted against the manifest weight of the evidence in denying her petition, they are rendered premature by our resolution of her second, third, and fifth assignments of error.

*Judgment reversed;*
*cause remanded.*

DORRIAN and EDELSTEIN, JJ., concur.

———————————