[Cite as *T.C. v. M.C.*, 2025-Ohio-2995.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [T.C.], | : | |
| Petitioner-Appellant, | : | No. 25AP-83 |
| | | (C.P.C. No. 24DV-2413) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [M.C.], | : | |
| Respondent-Appellee. | : | |

D E C I S I O N

Rendered on August 21, 2025

**On brief:** *Capital University Law School General Litigation Clinic and Family Advocacy Clinic, Lorie McCaughan,* and *Caroline A. Lahrmann,* for appellant.

APPEAL from Franklin County Court of Common Pleas,
Division of Domestic Relations

MENTEL, J.

{¶ 1} Petitioner-appellant, T.C., appeals from a December 11, 2024 entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying her domestic violence civil protection order ("DVCPO") against respondent-appellee, M.C. For the reasons that follow, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On December 3, 2024, T.C. filed a petition for DVCPO against M.C. Upon the conclusion of an ex parte hearing, the trial court granted the temporary ex parte protection order finding, "[M.C.] has criminal charges pending (Abduction) with Petitioner as victim witness." (Dec. 3, 2024 Order of Protection.)

{¶ 3} The trial court held a full hearing in this matter on December 10, 2024. While the record reflects that M.C. was served, he failed to appear at the full evidentiary hearing.

{¶ 4}   T.C. is the wife of M.C. but is in the process of filing for divorce.  (Dec. 10, 2024 Tr. at 4.)  On December 2, 2024, T.C. discovered that M.C. was intoxicated after drinking alcohol throughout the day.  (Tr. at 5.)  According to T.C., when M.C. drinks, "he gets more irritated and everything.  So what happened was he got mad at me because my mom wouldn't pay his cell phone bill because he hasn't been working at all."  (Tr. at 5.)  M.C. proceeded to get "annoyed with [T.C.] and started yelling at [her] and telling [her] that [she was] cheating on him and everything else, and tried to grab [her] cell phone."  (Tr. at 5.)  While T.C. was getting her special needs adult son ready for bed, M.C. "attacked" her by throwing her down on the bed and holding her down until she gave him the cellphone.  (Tr. at 6.)  M.C. then proceeded to block the front and back door of the residence.  "He told me that I was going nowhere.  I couldn't call for help."  (Tr. at 6.)  T.C. escaped upstairs, and she emailed her mother that she needed help as M.C. had taken her phone.  (Tr. at 6.)  M.C. again blocked her from going out the backdoor.  When M.C. was on the phone with his sister, T.C. yelled, "Tracy, help me."  (Tr. at 6.)  M.C.'s sister arrived and initially got him to leave the house.  M.C. came back into the house and "pushed [T.C.] into the living room up against the wall, hit [her] and then threw [the] phone at [her] and then left."  (Tr. at 7.)  T.C. testified that M.C. hit her on the face with an open hand.  (Tr. at 7.)

{¶ 5}   The trial court stated, "in order for this Court to grant civil protection orders, you have to prove that you are the victim of domestic violence.  And that means there is a two-part test.  You have to show imminent fear of serious physical harm, threats, danger or act, and it has to be reasonable given the circumstances."  (Tr. at 7-8.)  The trial court characterized the events as "fisticuffs" and did not "see where the serious physical harm -- when I'm saying serious, it is usually people threatening to kill people."  (Tr. at 8.)  T.C. interjected and stated that she had a thumb drive with additional evidence.  T.C. testified that M.C. "trashed the whole house and I have a video on there that he's yelling at me and telling me I'll pay for it if I keep talking."  (Tr. at 8.)  The trial court then asked T.C. to describe an image identified as "149."  (Tr. at 8-9.)  T.C. testified that the image was her "room that [M.C.] destroyed.  He's thrown my clothes outside.  I went over six months without having a cell phone, and all I had was an Alexa device."  (Tr. at 9.)  The trial court stated, "looking at the pictures, it's more of a nuisance and you will file for divorce.  Hopefully, you'll get exclusive use of the house."  (Tr. at 9.)  The trial court, based on the

current evidence, indicated that it would deny the DVCPO. "If you ever get more evidence then you can refile again, but I have to look at the standard and what the black and white law says. It says, fear of imminent, serious physical harm by the threats and/or actions of the respondent." (Tr. at 9.)

{¶ 6} On December 11, 2024, the trial court issued an entry denying T.C.'s petition for a DVCPO. The trial court concluded that T.C. "failed to prove by a preponderance of evidence the elements and burden under R.C. 3113.31." (Dec. 11, 2024 Entry.)

{¶ 7} T.C. filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 8} T.C. appealed from the trial court's entry and now asserts the following assignments of error for our review:

> [I.] The trial court erred as a matter of law, violated [T.C.]'s right to due process, and committed plain error when it did not hold a full hearing on [T.C.]'s Petition for CPO because it limited her presentation of evidence and opportunity for argument.
>
> [II.] The trial court erred as a matter of law when it conflated and misstated the statutory criterion for the issuance of a CPO under R.C. 3113.31(A)(1)(a)(i) and (ii) and thus improperly applied an additional burden of proof on [T.C.].
>
> [III.] The trial court erred as a matter of law and acted against the manifest weight of the evidence, and abused its discretion when it held [T.C.] did not prove by a preponderance of evidence she was entitled to a CPO under R.C. 3113.31(A)(1)(a)(i) and (ii) after she presented a prima facie case of domestic violence under each subsection.
>
> [IV.] The trial court erred as a matter of law, committed plain error, and violated [T.C.]'s constitutional rights under Marsy's Law when it did not recognize [T.C.] as a victim of crime.

## III. ANALYSIS

### A. T.C.'s First Assignment of Error

{¶ 9} In T.C.'s first assignment of error, she argues that the trial court denied her of a "full hearing" under R.C. 3113.31 by limiting her presentation of evidence and opportunity for a closing argument.

{¶ 10} Under R.C. 3113.31, a petitioner may seek a DVCPO to enjoin the respondent from further violence against the family or a household member. *I.S. v. I.S.S.*, 2024-Ohio-

2083, ¶ 6 (10th Dist.), citing *Parrish v. Parrish*, 2002-Ohio-1623. When a petitioner requests an ex parte order, the trial court is required to hold a hearing that same day. R.C. 3113.31(D)(1). At the conclusion of an ex parte hearing, the trial court, for "good cause shown," may issue a temporary order at petitioner's request. R.C. 3113.31(D)(1). "If an ex parte DVCPO is put in place, due process and statutory requirements mandate that the trial court 'schedule a full hearing' within seven court days and provide respondent 'notice of, and an opportunity to be heard at, the full hearing.' "   *I.S.* at ¶ 6, quoting R.C. 3113.31(D)(2)(a).

{¶ 11} While R.C. 3113.31 requires a "full hearing," the term is not defined under the statute. *C.R. v. Headley*, 2025-Ohio-1745, ¶ 13 (10th Dist.). This court has defined a "full hearing" as " 'one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.' " *C.R.* at ¶ 13, quoting *Tarini v. Tarini*, 2012-Ohio-6165, ¶ 14 (10th Dist.). We have found that the denial of a "full hearing," as contemplated under R.C. 3113.31, equates not only to a violation of the statute but a deprivation of due process. *Tarini* at ¶ 16.

{¶ 12} Our review whether a party received a full hearing pursuant to R.C. 3113.31 is de novo. *D.M.W. v. E.W.*, 2018-Ohio-821, ¶ 11 (10th Dist.), citing *Hope Academy Broadway Campus v. Ohio Dept. of Edn.*, 2008-Ohio-4694, ¶ 13 (10th Dist.). T.C., however, failed to raise this argument to the trial court at the hearing. As such, T.C. has waived all but plain error review of this issue. *C.R.* at ¶ 23; *see also H.C. v. R.C.*, 2016-Ohio-668, ¶ 9 (10th Dist.), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997) (" '[f]ailure to timely advise a trial court of possible error, by objection or otherwise,' results in a waiver of the issue for purposes of appeal, unless the party can demonstrate plain error"). In the civil context, a reviewing court only reverses a trial court decision under the plain error doctrine in "extremely rare cases" when the alleged error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *C.R.* at ¶ 11, citing *H.C.* at ¶ 9.

{¶ 13} This court has found that a trial court denies a petitioner a "full hearing" under a variety of circumstances. *See, e.g.*, *Tarini* at ¶ 15-16 (finding the trial court failed to hold a "full hearing" when it stopped the petitioner's direct examination and did not allow

him to resume presenting evidence to rebut the respondent's case-in-chief); *Spigos v. Spigos*, 2004-Ohio-757, ¶ 16, 20 (10th Dist.) (concluding that the trial court erred by not holding a full hearing when it interrupted the petitioner's testimony, met with counsel off the record, did not allow the petitioner to continue testifying or present additional evidence, and precluded the respondent from presenting evidence before ultimately denying the petition); *H.C.* at ¶ 13-14 (finding the trial court did not conduct a full hearing when it precluded the respondent from presenting evidence and a closing argument before ruling on the petition); *C.R.* at ¶ 21, 23 (finding the trial court denied both parties a full hearing when it cut off C.R.'s testimony and did not allow additional evidence from either party).

{¶ 14} The record reflects that the trial court permitted T.C. to present evidence regarding her DVCPO filing. Because M.C. was not present for the hearing, the trial court allowed T.C. to present her case in a more informal fashion. This informality, however, does not necessarily mean that a full and fair hearing did not take place. The trial court often provides pro se litigants a certain amount of latitude by permitting a more unstructured hearing to reach the merits of the case. *C.T. v. NY.*, 2023-Ohio-3029, ¶ 19 (10th Dist.). "[D]omestic relations proceedings may be flexible and informal as long as they permit litigants a full and fair opportunity to be heard." *Id.* T.C. provided photographs and video evidence on a thumb drive to the trial court to consider as part of her petition. T.C. broached the subject of the thumb drive only after the trial court began discussing its impressions of the case. While the trial court was initially hesitant to allow T.C. additional time to present her claim, it ultimately reviewed the photographic evidence and specifically asked T.C. about one of the photographs. The trial court ultimately concluded that, "even with looking at the pictures," it did not find the evidence persuasive. (Tr. at 9.) Based on the trial court's statements, we can reasonably conclude that it considered T.C.'s photographic evidence in reaching its decision. Unlike *Spigos*, *C.R.*, *H.C.,* and *Tarini*, the trial court did not meaningfully restrict T.C.'s testimony or affirmatively deprive her of the opportunity to present evidence.

{¶ 15} We are also not persuaded that the trial court precluded T.C. from presenting a closing argument. Again, because M.C. was not present and T.C. was pro se, the trial court allowed her to present her case outside a more formal structure. Unlike the above cited cases, at no point did the trial court affirmatively deprive T.C. of the opportunity to present

evidence or, in this case, a closing argument. While appellant is a pro se litigant, she is held to the same standard as litigants with legal representation. *C.W. v. J.S.*, 2022-Ohio-1951, ¶ 36 (10th Dist.), citing *JPMorgan Chase Bank, N.A. v. Cloyes*, 2021-Ohio-3316, ¶ 9 (10th Dist.), citing *In re Black Fork Wind Energy, L.L.C.*, 2013-Ohio-5478, ¶ 22. The failure to present evidence is not the same as the denial of the opportunity to present evidence. Thus, we are not persuaded that the trial court deprived T.C. of a "full hearing" under R.C. 3113.31.

{¶ 16} T.C.'s first assignment of error is overruled.

### B. T.C.'s Second, Third, and Fourth Assignments of Error

{¶ 17} In T.C.'s second assignment of error, she contends the trial court erred as a matter of law when it conflated two distinct statutory criteria under R.C. 3113.31. In T.C.'s third assignment of error, she contends that the trial court's denial of the DVCPO was against the manifest weight of the evidence.[1] Finally, in her fourth assignment of error, T.C. contends that her rights were violated under Marsy's Law. For ease of discussion, we will address T.C.'s second, third, and fourth assignments of error together.

### 1. R.C. 3113.31

{¶ 18} The legislature " 'enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case.' " *Martin v. Martin*, 2013-Ohio-5703, ¶ 7 (10th Dist.), quoting *Felton v. Felton*, 79 Ohio St.3d 34, 37 (1997). R.C. 3113.31 empowers a trial court, after a full hearing on the petition, to issue a DVCPO lasting up to five years. R.C. 3113.31(E)(1), (E)(3)(a).

{¶ 19} In order to grant a DVCPO, the trial court must find that the petitioner has demonstrated, by a preponderance of evidence, that the petitioner or petitioner's family or household members are in danger of "domestic violence." *Downs v. Strouse*, 2006-Ohio-505, ¶ 11 (10th Dist.). Relevant to the instant case, R.C. 3113.31 defines "domestic violence" as "[t]he occurrence of one or more of the following acts against a family or household member:" " (i) [a]ttempting to cause or recklessly causing bodily injury; [or] (ii) [p]lacing

---

[1] T.C.'s third assignment of error also asserts that the trial court's decision was an abuse of discretion. For the reasons set forth below, we find that the appropriate standard of review regarding the trial court's denial of a DVCPO is manifest weight of the evidence.

another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." R.C. 3113.31(A)(1)(a)(i) through (ii). We review whether the trial court has applied the correct legal standard de novo. *See, e.g.*, *T.H. v. N.H.*, 2021-Ohio-217, ¶ 49 (10th Dist.).

{¶ 20} While the trial court's entry cited R.C. 3113.31, it failed to provide any analysis of the relevant standard or explain its basis for denying the DVCPO. During the hearing, however, the trial court, made several statements as to its understanding of the statutory requirements for granting a DVCPO. The trial court stated:

> But in order for this Court to grant civil protection orders, you have to prove that you are the victim of domestic violence. And that means there is a two-part test. You have to show imminent fear of serious physical harm, threats, danger or act, and it has to be reasonable given the circumstances.
>
> When I look at this and hear what you said in the manner in which you said it, and the facts that you stated, it sounds like it was a fisticuffs, but I don't see where serious physical harm -- when I'm saying serious, it is usually people threatening to kill people.
>
> . . .
>
> [B]ut I have to look at the standard and what the black and white law says. It says, fear of imminent, serious physical harm by the threats and/or actions of the respondent.

(Tr. at 7-9.)

{¶ 21} Upon review, it is apparent from the transcript that the trial court conflated the statutory provisions concerning attempting to cause or recklessly causing bodily injury, *see* R.C. 3113.31(A)(1)(a)(i), and placing another person by threats of force in fear of imminent serious physical harm, *see* R.C. 3113.31(A)(1)(a)(ii). These statutory provisions are separate grounds for a trial court to grant a DVCPO. Thus, the trial court erred by holding T.C. to a heightened legal standard under the statute. T.C.'s second assignment of error is sustained.

### 2. Manifest Weight

{¶ 22} Turning to T.C.'s third assignment of error, she contends that the trial court's decision to deny her petition for a DVCPO was an abuse of discretion and against the manifest weight of the evidence. While T.C.'s third assignment of error includes two

distinct standards of review, she touches on a discrepancy in our district that requires review.

### a. Standard of Review

{¶ 23} When resolving whether a trial court erred by denying or granting a DVCPO or civil stalking protection order, this court has employed different standards of review. In some instances, we have reviewed the trial court's grant or denial of the protection order for an abuse of discretion. *See, e.g.*, *E.C. v. R.C.*, 2020-Ohio-1520, ¶ 7 (10th Dist.), citing *Austin v. Austin*, 2019-Ohio-4023, ¶ 6 (10th Dist.), citing *C.L. v. T.B.*, 2019-Ohio-1864, ¶ 7 (10th Dist.). In other cases, we have only reversed the trial court's ruling on a protection order if it goes against the manifest weight of the evidence. *See, e.g.*, *J.R. v. E.H.*, 2017-Ohio-516, ¶ 10 (10th Dist.), citing *Bradley v. Cox*, 2004-Ohio-4840, ¶ 9 (10th Dist.); *Strassell v. Chapman*, 2010-Ohio-4376, ¶ 9-10 (10th Dist.); *Fleckner v. Fleckner*, 2008-Ohio-4000, ¶ 15 (10th Dist.); *Kabeer v. Purakaloth*, 2006-Ohio-3584, ¶ 7 (10th Dist.).

{¶ 24} This inconsistency is not limited to our district. Recently, the Eighth District Court of Appeals realigned the precedent out of its district regarding the standard appellate courts should apply when reviewing challenges to civil protection orders. *See S.M. v. T.G.*, 2025-Ohio-1448 (8th Dist.). The Eighth District thoughtfully set out how the standard of review became so variable among Ohio courts. *Id.* at ¶ 15-26. The *S.M.* court concluded, "going forward, when the question on appeal is whether the trial court's decision to grant or deny a civil protection order — whether it is a domestic violence civil protection order or civil stalking protection order — our standard of review is whether there was sufficient, credible evidence to support a finding that the respondent engaged either in acts of domestic violence or acts of menacing by stalking against the petitioner." (Further citation omitted.) *S.M.* at ¶ 26. However, if the question on appeal concerns "the scope and terms of a civil protection order are at issue, then we review for an abuse of discretion." *Id.* After a review of the relevant case law, we agree with the analysis in *S.M.* and will employ the same approach moving forward.

### b. Analysis

{¶ 25} Returning to T.C.'s third assignment of error, we must resolve whether there was sufficient, credible evidence to support the trial court's denial of the DVCPO.

{¶ 26} As set forth previously, for the trial court to grant a DVCPO under R.C. 3113.31(A)(1)(a)(i), a petitioner is required to show, by a preponderance of evidence, that respondent "[a]ttempt[ed] to cause or recklessly caus[ed] bodily injury." *J.R.* at ¶ 15. While R.C. 3113.31 does not define the term "bodily injury," this court has utilized for the purposes of the offense of domestic violence under R.C. 2901.01(A)(3), "physical harm" to a person means "any injury, regardless of its gravity or duration." *J.R.* at ¶ 13, citing *State v. Reynolds*, 2004-Ohio-3692, ¶ 14 (10th Dist.). As set forth in R.C. 2923.02(A), an "attempt" is defined as "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Finally, the General Assembly has defined the culpable mental state "recklessly" as follows:

> (C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.
>
> . . .
>
> (E) When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element.

 R.C. 2901.22(C), (E).

{¶ 27} At the hearing, T.C. alleged that M.C.: (1) threw her down on the bed; (2) held her down until she gave him the cellphone; (3) blocked the front and back doors and stated, "she was going nowhere"; (4) pushed her into the living room against the wall; (5) hit her with an open hand on her face; and (6) threw a cellphone at her. (Tr. at 5-7.)

{¶ 28} Upon review, we find that the trial court's denial of T.C.'s DVCPO lacked sufficient, credible evidence. As alleged, M.C. struck T.C. on the face, threw a cellphone at her, and repeatedly pushed her, both on the bed and against a wall, during the incident. As M.C. failed to appear at the hearing, there was no contrary evidence that would throw T.C.'s credibility into question. Regardless, the transcript indicates that while the trial court found T.C. credible, it concluded that she did not meet the statutory criteria. This is most evident

by her description of the incident as "fisticuffs."[2] (Tr. at 8.) However, the trial court's characterization of the incident as "fisticuffs" indicates that an attempt to cause bodily injury took place. Our decision in *J.R.* is instructive on this point.

{¶ 29} In *J.R.,* the petitioner filed a DVCPO alleging multiple separate incidents of domestic violence. *Id.* at ¶ 3. The trial court ultimately denied the petition explaining, "the incident that I spent the time trying to understand is the incident in October and how we got to a point that the two of you are beating on each other in a truck and why that occurred." (Emphasis omitted.) *Id.* at ¶ 14. This court reversed the trial court's decision concluding, "[i]n our view, the trial court's finding that appellant and appellee were 'beating on each other in a truck' requires the conclusion that appellee attempted to cause bodily injury to appellant." *Id.* at ¶ 17. We went on to explain that the trial court ignored its own factual finding and erroneously focused on the lack of evidence as who started the altercation. *Id.* We found this imposed an additional burden of proof on appellant that was not required under R.C. 3113.31(A)(1)(a). *Id.*

{¶ 30} Similar to the trial court's finding in *J.R.* that the parties were "beating on each other," the trial court in this case characterized this altercation as "fisticuffs." *Id.* at ¶ 17. Putting aside that there was no testimony that T.C. attempted or caused bodily harm to M.C., implicit in the "fisticuffs" finding is that M.C. attempted to cause or recklessly caused bodily harm to T.C. Therefore, the statutory requirements under R.C. 3113.31(A)(1)(a) are satisfied for the issuance of a DVCPO. Given T.C.'s testimony and the trial court's own findings, the evidence overwhelmingly supports the conclusion that M.C. committed "domestic violence" against T.C. Thus, we hold that the trial court's decision to deny T.C.'s petition for a DVCPO was against the manifest weight of the evidence and warrants reversal.

{¶ 31} Because we find that the trial court's denial of the DVCPO under R.C. 3113.31(a)(i) was against the manifest weight of the evidence, we decline to review whether the trial court's decision lacked sufficient, credible evidence under (a)(ii). *See J.R.* at ¶ 16 ("Under R.C. 3113.31(A)(1)(a), a CPO will issue on proof that appellee attempted to cause or recklessly caused bodily injury to appellant regardless of whether appellee also placed

---

[2] "Fisticuffs" is defined as "[a] pugilistic encounter; an instance of fist-fighting." *Black's Law Dictionary*, 777 (12th Ed. 2024).

appellant in fear of imminent serious physical harm."). *See also Bullard v. Alley*, 2014-Ohio-1016, ¶ 21 (4th Dist.) ("Because we determined that some evidence supports the court's finding of domestic violence under R.C. 3113.31(A)(1)(a), we need not also consider whether the evidence supports a finding under R.C. 3113.31(A)(1)(b)."). Furthermore, based on our resolution of the third assignment of error, we also decline to address T.C.'s fourth assignment of error regarding Marsy's Law as the assignment of error is now moot.

## IV. CONCLUSION

{¶ 32} Having overruled T.C.'s first assignment of error, sustained her second and third assignments of error, and rendering moot her fourth assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. This matter is remanded for the trial court to grant the DVCPO forthwith and determine the scope of the protection order consistent with this decision.

*Judgment reversed*;
*cause remanded with instructions.*

BOGGS and DINGUS, JJ., concur.

_____