[Cite as *Chambers v. Chambers*, 2026-Ohio-1620.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

---

JAMIE CHAMBERS,

    PETITIONER-APPELLEE,

  v.

MATTHEW CHAMBERS,

    RESPONDENT-APPELLANT.

CASE NO. 17-25-18

OPINION AND
JUDGMENT ENTRY

---

Appeal from Shelby County Common Pleas Court
Domestic Relations Division
Trial Court No. 25DR000119

**Judgment Affirmed**

**Date of Decision:  May 4, 2026**

---

**APPEARANCES:**

    *Matthew Chambers,* **Appellant**

    *Blue T. Burns* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Respondent-appellant Matthew T. Chambers ("Matthew") filed a *pro se* appeal of the judgment of the Domestic Relations Division of the Shelby County Court of Common Pleas, arguing that the trial court erred in granting a domestic violence civil protection order ("DVCPO") that was requested by petitioner-appellee Jamie Chambers ("Jamie"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Jamie and Matthew were married in July of 2022 and had a child together in December of 2022. On December 28, 2024, Matthew and Jamie separated. On May 16, 2025, Jamie filed a petition that requested a domestic violence civil protection order pursuant to R.C. 3113.31. She alleged that Matthew was physically abusive towards her when they lived together and was stalking her after their separation. The magistrate then issued an ex parte DVCPO that was set to expire on June 30, 2025.

{¶3} On May 28, 2025, Matthew and Jamie testified at the hearing on the petition. Jamie testified that, during their relationship, Matthew had physically abused her on multiple occasions. She stated that, in separate incidents, Matthew had dragged and thrown her across the floor; had held a gun to her head, thrown her against a wall, and put her into a chokehold until she passed out; had choked her

while she was in the shower before slapping her; had grabbed her by the throat, dragged her out of a room, and thrown her across the floor; and had put her in a chokehold causing her to pass out.

**{¶4}** Jamie further testified that, after their separation, Matthew had repeatedly used multiple social media accounts to contact her. She also indicated that Matthew had searched for her in person and had found the locations where she was temporarily residing after their separation. Jamie stated that she was fearful for her safety because Matthew was in possession of a gun and had threatened to kill her. Jamie called the wife of Matthew's brother as a witness. She testified that she had known Matthew for most of his life and that she had picked Jamie up after she had been "choked . . . out." (Tr. 38). She also stated that she had heard Matthew threaten Jamie.

**{¶5}** Matthew then testified that he no longer had any firearms. He stated that he gave his gun to a relative for safe keeping. He then testified that he had given his gun to a female coworker but then mentioned that he was living with this female coworker. Matthew then stated that this female coworker put the gun in her mother's possession. During his testimony, he also alleged that he had text messages from Jamie that invited him to her residence to visit their minor child. However, Matthew did not introduce any text messages while presenting his case or at the end of the hearing when the magistrate asked whether the parties had any other evidence to present.

{¶6} On May 29, 2025, the magistrate issued a DVCPO that was to remain in effect through May 28, 2030. On June 9, 2025, Matthew filed objections to the magistrate's decision alongside a motion for leave to file additional evidence. On June 18, 2025, the trial court issued an order that denied Matthew's request to include new materials in the record. On September 24, 2025, the trial court issued an order that overruled Matthew's objections to the magistrate's decision and adopted the decision to issue the DVCPO.

{¶7} Matthew filed his notice of appeal pro se on October 21, 2025. On appeal, he raises the following four assignments of error:

**First Assignment of Error**

**The trial court's decision to grant a domestic-violence civil protection order was against the manifest weight of the evidence and not supported by sufficient, credible evidence under R.C. 3113.31.[1]**

**Second Assignment of Error**

**The trial court violated Appellant's due-process rights and abused its discretion by refusing to accept and consider relevant affidavits and documentary exhibits, and by proceeding on an incomplete record contrary to App.R. 9 and R.C. 3113.31.**

**Third Assignment of Error**

**The trial court erred and abused its discretion by finding 'stalking' based on Appellant's lawful efforts to communicate about parenting time and to use public-record addresses and**

---

[1] The language in the assignments of error that are listed in the table of contents in Matthew's brief do not consistently correspond to the language of the assignments of error that he sets forth above his arguments in the body of his brief. In this opinion, we set forth the language of the assignments of error that correspond to the arguments in the body of his brief.

**court processes to maintain a relationship with his child, contrary to the statutory definition of menacing by stalking and the evidence in the record.**

**Fourth Assignment of Error**

**The trial court erred and denied Appellant a fair and impartial hearing by relying on the testimony of Jackie Chambers and Attorney Blue Sullivan, and by crediting their hearsay-laden assertions of a prior 'history' of violence over Appellant's sworn testimony and the absence of any police or medical evidence in the record. (Tr. 35-40; Journal Entry at 3-4).**

*First Assignment of Error*

{¶8} Matthew argues that the trial court's decision to issue a DVCPO was not supported by sufficient evidence or the manifest weight of the evidence and that the trial court erred in characterizing his conduct as stalking.

Legal Standard

{¶9} "R.C. 3113.31 provides for a petitioner's right to request a CPO on behalf of herself or anyone living in the residence with her to obtain protection from domestic violence." *Clementz-McBeth v. Craft*, 2012-Ohio-985, ¶ 12 (3d Dist.). "A person seeking a civil protection order must prove domestic violence or danger of domestic violence by a preponderance of the evidence." *J.M.P. v. J.R.P.*, 2026-Ohio-367, ¶ 12 (10th Dist.). The Revised Code defines "domestic violence" as including the following actions against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv) Committing a sexually oriented offense.

R.C. 3113.31(A)(1)(a). When the respondent challenges the trial court's decision to issue a DVCPO, appellate courts determine whether the determination is against the manifest weight of the evidence. *Hasbrook v. Hasbrook*, 2025-Ohio-418, ¶ 5 (3d Dist.). Thus, the issuance a DVCPO will not be reversed if some competent, credible evidence supports the trial court's decision. *Id*.

Legal Analysis

**{¶10}** On appeal, Matthew raises three main arguments. First, he asserts that the evidence did not establish any occurrence of domestic violence as defined by R.C. 3113.31. However, the trial court heard testimony from Jamie regarding Matthew's conduct and its effect on her sense of safety. Jamie testified about multiple incidents in which Matthew engaged in physically abusive conduct. She also stated that he had threatened to kill her; had put a gun to her head; and had used different social media accounts to contact her since their separation. Similarly, the wife of Matthew's brother testified that she had helped Jamie after these incidents and had heard Matthew threaten Jamie.

**{¶11}** In this case, the trier of fact found that Jamie's testimony was credible and was, as the trier of fact, in the best position to make this determination and met the burden set forth by R.C. 3113.31. *State v. Harrison*, 2015-Ohio-1419, ¶ 18 (3d Dist.). Having examined the record, we conclude that some competent, credible evidence supports the trial court's decision. *See Craft*, 2012-Ohio-985, at ¶ 13 (3d Dist.) (finding a DVCPO was not against the manifest weight of the evidence where the trial court based its decision "upon the petitioner's testimony she was threatened with a gun."). The first argument is without merit.

**{¶12}** Second, Matthew argues that the trial court's decision was against the manifest weight of the evidence because Jamie did not present evidence to corroborate her testimony. As an initial matter, we note that Matthew's sister-in-law provided testimony that corroborated Jamie's statements about Matthew's history of verbal threats and abusive actions. Thus, Jamie did produce evidence at the hearing that corroborated her own testimony.

**{¶13}** As part of this argument, Matthew points out that Jamie did not present any police reports or medical records at the hearing, but he does not identify any legal authority that suggests that such evidence was necessary to obtain a DVCPO. In fact, courts have indicated that a petitioner is not required to produce these types of records to secure a DVCPO. *Baltes v. Baltes*, 2012-Ohio-4890, ¶ 30 (11th Dist.); *Wilson v. Wilson*, 2023-Ohio-4243, ¶ 30 (12th Dist.), citing *Felton v. Felton*, 79

Ohio St.3d 34, 44, fn. 9 (1997). *See also Durastanti v. Durastanti*, 2020-Ohio-4687, ¶ 17-18 (1st Dist.). Thus, the second argument is also without merit.

**{¶14}** Third, Matthew argues that the trial court's decision is against the manifest weight of the evidence because he denied Jamie's allegations and her testimony was not credible. However, the magistrate found that Matthew's testimony about the incidents Jamie described and the whereabouts of his firearm was not credible. The magistrate noted that Jamie's testimony had some inconsistencies but found that she carried the burden required by R.C. 3113.31.

**{¶15}** Ultimately, a "trier of fact is free to believe all, part, or none of any witnesses' testimony." *Frisby v. Frisby*, 2025-Ohio-5874, ¶ 20 (4th Dist.). Thus, the decision to issue the DVCPO is not against the manifest weight of the evidence simply because the trial court believed Jamie's testimony over Matthew's testimony. *M.S. v. Ives*, 2025-Ohio-5312, ¶ 46 (5th Dist.). Thus, this third argument is without merit. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶16}** Matthew contends that the trial court erred by denying a motion for leave to file various exhibits that he filed after the full hearing on the petition.

Legal Standard

**{¶17}** "To prevail on appeal, the appellant must carry the burden of affirmatively demonstrating that the trial court erred." *Bigler v. Haynes*, 2025-Ohio-5105, ¶ 6 (3d Dist.), citing *Jabr v. Columbus*, 2023-Ohio-2781, ¶ 11 (10th

Dist.). If a pro se litigant does not present exhibits to the magistrate at the hearing, he or she cannot argue on appeal that the magistrate erred by excluding or failing to consider these evidentiary materials. *See Aston v. Aston*, 2018-Ohio-908, ¶ 9 (11th Dist.) (The failure to proffer exhibits waives issues related to their admissibility on appeal.).

Legal Analysis

**{¶18}** Matthew asserts that the magistrate erred by failing to admit or consider various text messages and law enforcement records that he wanted to introduce at the full hearing.[2] During his testimony, he alleged that text messages and law enforcement records supported his case. However, as noted by the appellee in her brief, Matthew did not produce these referenced materials while he presented his case. Further, at the conclusion of the hearing, the magistrate asked if the parties had any additional evidence to present, but Matthew did not take this opportunity to introduce any of these materials.

**{¶19}** After the full hearing, Matthew filed an objection with the trial court asserting the magistrate erred by excluding his exhibits. In response, the trial court found that he "did not offer into evidence a single document. He did claim to have with him certain documents, but never produced or offered any such documents."

---

[2] After the magistrate made a decision on the DVCPO, Matthew filed a motion for leave that sought permission to present additional evidence to the trial court. However, he does not challenge the trial court's decision to deny this motion on appeal and limits his arguments to what the magistrate considered at the full hearing. We limit our analysis to the argument that Matthew has raised on appeal.

(Doc. 51). The record before us indicates that Matthew did not take the necessary steps to introduce the materials he references into evidence or to prompt a ruling on their admissibility. He cannot demonstrate that the magistrate erred by failing to admit or consider evidence that he did not present at the hearing. Thus, Matthew has failed to demonstrate that the error he alleges on appeal occurred. Accordingly, the second assignment of error is overruled.

### Third Assignment of Error

**{¶20}** Matthew argues that the evidence does not establish that he engaged in the offense of menacing by stalking in violation of R.C. 2903.211.

### Legal Standard

**{¶21}** We reincorporate the legal standard governing the issuance of a DVCPO as set forth under the first assignment of error.

### Legal Analysis

**{¶22}** In this case, the trial court concluded that Jamie had satisfied the requisite burden that is set forth under R.C. 3113.31. On appeal, Matthew asserts that Jamie did not establish that domestic violence within the meaning of R.C. 3113.31(A)(1)(a)(ii) occurred because the evidence did not show that he committed menacing by stalking as defined by R.C. 2903.211. Initially, we note that

> R.C. 3113.31(A)(1)(a)(ii) defines 'domestic violence' in part as '[p]lacing another person by the threat of force in fear of imminent serious physical harm *or* committing a violation of section 2903.211 *or* 2911.211 of the Revised Code.' These clauses are written in the disjunctive, such that a person may commit an act of domestic

violence by the threat of force or by violating the menacing by stalking statute (R.C. 2903.211), which does not require a threat of force.

(Emphasis added.) *Edelstein v. Edelstein*, 2023-Ohio-2503, ¶ 21 (1st Dist.). Thus, the record does not need to contain evidence that establishes that Matthew committed a violation of R.C. 2903.211 for the type of domestic violence defined in R.C. 3113.31(A)(1)(a)(ii) to be found applicable in this case.

{¶23} Further, the finder of fact also concluded that, in addition to making threats that caused Jamie to be fearful for her safety, Matthew had been "physically violent on numerous occasions" and that these incidents included multiple instances of "strangulation." (Doc. 14). Thus, even if we found the arguments based upon R.C. 3113.31(A)(1)(a)(ii) to have merit, Matthew's acts of physical abuse still establish that domestic violence within the meaning of R.C. 3113.31(A)(1)(a)(i) had occurred in this case. *Bullard v. Alley*, 2014-Ohio-1016, ¶ 21 (4th Dist.); *T.C. v. M.C.*, 2025-Ohio-2995, ¶ 31 (10th Dist.). This argument fails to establish that the decision to issue to DVCPO was erroneous. Accordingly, the third assignment of error is overruled.

*Fourth Assignment of Error*

{¶24} Matthew argues that the trial court denied him a fair and impartial hearing by improperly relying on certain testimony and hearsay assertions.

## Legal Standard

**{¶25}** The Ohio Rules of Appellate Procedure governs the appeals process. App.R. 1(A). Under App.R. 16(A)(7), an appellant's brief is to include

> [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.

App.R. 16(A)(7). "The appellant cannot prove the trial court erred by 'merely setting forth conclusory statements' that claim the trial court erred." *Adams v. June*, 2021-Ohio-168, ¶ 8 (3d Dist.), quoting *In re B.P.*, 2015-Ohio-48, ¶ 10 (9th Dist.). Pursuant to App.R. 12(A)(2), a reviewing "court may disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

## Legal Analysis

**{¶26}** While Matthew has an assignment of error, the body of his brief does not contain a corresponding argument in support of his claim. Thus, his challenge does not comply with the requirements of App.R. 16(A). For this reason, App.R. 12(A)(2) permits this Court to disregard this assignment of error. *Pierce v. Workman*, 2023-Ohio-2022, ¶ 19 (3d Dist.). Accordingly, his fourth assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Domestic Relations Division of the Shelby County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**MILLER and WALDICK, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

John R. Willamowski, Judge

 

Mark C. Miller, Judge

 

Juergen A. Waldick, Judge

DATED:
/hls